**UNITED STATES of America ex rel. Roy James METZ**

v.

**James F. MARONEY, Superintendent, State Correctional Institution, Pittsburgh, Pennsylvania, Appellant.**

No. 16983.

United States Court of Appeals Third Circuit.

Argued May 24, 1968.

Decided Nov. 15, 1968.

Rehearing Denied Dec. 20, 1968.

Certiorari Denied April 1, 1969.
See 89 S.Ct. 1287.

Charles B. Watkins, Asst. Dist. Atty., of Allegheny County, Pittsburgh, Pa. (Robert W. Duggan, Dist. Atty. of Allegheny County, Edwin J. Martin, Asst. Dist. Atty., Pittsburgh, Pa., on the brief), for appellant.

Joseph I. Lewis, Pittsburgh, Pa., for appellee.

Before HASTIE, Chief Judge, and KALODNER and STALEY, Circuit Judges.

HASTIE, Chief Judge.

This is an appeal by the State of Pennsylvania from a judgment of a district court granting habeas corpus to Roy Metz, a state prisoner serving a life term for the murder of his wife. In granting the writ, the district court concluded that the course followed by the state trial court in requiring the accused to stand trial after the court, on its own initiative, had set aside a guilty plea, offended the Fifth Amendment stricture against double jeopardy as made applicable to state proceedings by the Fourteenth Amendment.

The record of the state proceedings shows that, after his indictment on a charge of willfully killing his wife, the accused pleaded guilty to the charge of murder generally.[1] This plea followed assurance by the prosecutor that he viewed the homicide as second degree murder and would recommend a sentence of not less than seven years.

The case came on for hearing as provided by state law to determine the degree of the offense. After several witnesses called by the prosecution testified to a willful killing, the accused testified at length. The following excerpts are pertinent:

"Q. (Counsel for Metz) Why did you do it? Why did you go to the cupboard and get the gun?

A. I went in the cupboard to get this gun in order to scare my wife again, but that time not to her. I told her I was going to use it on myself.

Q. Why did you tell her you were going to shoot yourself or words to that effect?

A. I remember her saying that she wouldn't live with me if I was the last man in the world.

\* \* \* \* \* \*

Q. Did you get the gun out and point it at her or you?

A. I pointed it at myself.

Q. Then what happened?

A. She says, 'For God's sake, Roy, don't do anything like that. Think of your own people.' And I was still in grips, and she grabbed my hand, we had a struggle, and as far as I know, she was pulling on—she was going down and pulling me with the gun in my hand, and it went off.

\* \* \* \* \* \*

Q. When you produced this gun that night, had you any intention in the world of shooting Mrs. Metz?

A. As I am trying to tell the Court, I would rather do away with myself than shoot anybody else, my family or anyone.

\* \* \* \* \* \*

Q. Do you have any clear recollection of everything in connection with the struggle?

---

[1]. "A plea of guilty to an indictment for murder constitutes an admission or confession of guilt of the crime of murder, with the degree of murder to be determined, and the penalty fixed, by the court. \* \* \*" Commonwealth v. Ahearn, 1966, 421 Pa. 311, 316, 218 A.2d 561, 564.

A. The only thing that comes clear in this struggle, and I was trying to do, I guess, maybe—maybe we'll say it was an act. I was still trying to get it to my head, and she was pulling it away from me and had twisted; and as she twisted downward, the gun went off and I did see my wife drop. The next thing I remember is when Officer Pike shook me up. Searching me. I guess I was panic-stricken, and that's the next thing I remember was when this officer was searching me.

\* \* \* \* \* \*

The Court: Mr. Clunk (Counsel for defendant) we have here a plea of guilty.

The Defendant: The only reason I accepted a guilty plea, your Honor, was that I felt guilty of being there, and that was all. I did not plead guilty to murder. I pleaded guilty to being in that house, and inasmuch as I am alive and my wife is dead, I thought that that's what I was pleading to. I did not plead guilty to murder.

The Court: Mr. Metz, you did plead guilty to murder.

A. The only reason that I offered a guilty plea at all was on the advice of Mr. Clunk. There is no reason for me to plead guilty to a murder that I did not think took place.

\* \* \* \* \* \*

A. \* \* \* I merely placed myself in Mr. Clunk's hands, and he said he thought I should plead guilty of being here, because there is only two people involved, and since I happen to be alive and my wife is dead, that there is a homicide here.

\* \* \* \* \* \*

The Court: Well, Mr. Clunk, you will realize that I could not in good conscience permit a plea of guilty to murder to stand when a man testifies under oath that the death was accidental, because that is not murder, that is not guilty.

The Defendant: I appreciate that.

The Court: \* \* \* We can only sentence in murder upon a convic-tion by a jury or upon a plea of guilty. The plea of guilty is inconsistent with his testimony, and we have stated our position. If his testimony is to stand, the plea will be stricken and a not guilty plea will be entered by direction of the Court and he will go to trial before a jury. A jury will then determine the facts. He must admit the facts of killing before we can accept a plea of not guilty and sentence him.

This trial is recessed until Monday morning at 9:30, at which time the sheriff will bring you before us, in the presence of your counsel, and at that time we will ask you whether you are ready to change your testimony or whether you stand on it.

The Defendant: Yes, sir.

\* \* \* \* \* \*

MONDAY

The Court: Mr. Clunk, will you bring Mr. Metz up to the bar. Have you considered the matter over the weekend, Mr. Metz?

The Defendant: Yes, sir. There wasn't much consideration to it, sir. When I got on the stand, your Honor, I meant to tell you the truth to the best of my knowledge, and that was the whole truth.

The Court: The testimony of the prosecution is entirely different from the testimony that you gave, and under the testimony of the prosecution a plea of guilty would be very much in order. But, as I told you on Friday, I cannot permit your plea to stand if you stand by the testimony that you gave.

The Defendant: That is what I wish to do, your Honor.

The Court: In that case the Clerk will strike the plea of guilty from the record and will enter a plea of not guilty for the defendant, Roy James Metz, and we will send the case to a jury."

The accused did not explicitly assent to this striking of his guilty plea and entry of a plea of not guilty. On the other hand, he expressed no objection and took no exception to the judge's ac-

tion. We will treat the case as one in which the court struck the guilty plea without the consent of the accused. A jury subsequently found the accused guilty of murder in the first degree and he was sentenced to life imprisonment.

In the present habeas corpus proceeding the court below, after reviewing a number of precedents, ruled "that there was no absolute necessity or realistic justification for the dismissal of Metz's plea without his express consent, and that his subsequent trial and conviction of murder in the first degree constituted double jeopardy * * *".

■ We think the district court was mistaken in its view of the appropriate conduct of the trial judge in the unanticipated situation that confronted him during the hearing to determine the degree of the crime. In substance, the accused stated and reiterated that he intended to shoot himself and not his wife and that his gun was accidentally discharged as they struggled for possession of it. He also stated that he followed the advice of counsel in pleading guilty and thought such a plea was a proper course since he was in a sense responsible for the homicide even though he did not intend it.

■■ Thus, the accused was saying that he was willing to let his plea of guilty to murder stand and at the same time insisting that the facts were such as plainly would not constitute a killing with malice aforethought, perhaps not even manslaughter.[2] Had the accused made such a statement of the circumstances of the homicide and his reason for wishing to plead guilty at the time his plea was tendered, it would have been proper for the judge to refuse to accept the plea. See Machibroda v. United States, 1962, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473; Commonwealth ex rel. West v. Myers, 1966, 423 Pa. 1, 222 A.2d 918; Commonwealth ex rel. Barnosky v. Maroney, 1964, 414 Pa. 161, 199 A.2d

424. For an acceptable guilty plea connotes more than willingness to be punished for an alleged crime. It at least implies an admission of conduct which, if proved, would warrant a verdict of guilty. Kercheval v. United States, 1927, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009. Trial judges often require, and properly so, that this admission be made explicit before the plea of guilty is accepted.

Thus, when it appeared before sentence in the present case that the accused would not, and it became at least doubtful whether he ever intended to, admit criminal conduct, the trial judge, in proper discharge of his judicial responsibility to avoid unfairness to the accused, set the plea aside as having been tendered without full understanding of its significance and accepted because of a misapprehension as to what the accused intended to admit. Cf. Commonwealth v. Scoleri, 1964, 415 Pa. 218, 247, 248, 202 A.2d 521, 536, 203 A.2d 319.

In these circumstances, the subsequent requirement that the accused stand trial as on a plea of not guilty did not violate the constitutional prohibition against double jeopardy. The situation here was analogous to that which arises when some occurrence during a trial leads the judge reasonably to conclude that it would be unfair to the accused to proceed and that justice requires that a mistrial be declared and a new trial ordered without regard to the wishes of the accused.

Gori v. United States, 1961, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901, is such a case and its rationale applies here. In the *Gori* case, the trial judge, anticipating that a line of questioning was proceeding in a direction that might suggest prior wrongdoing by the accused, and acting *sua sponte*, had declared a mistrial. A second trial was held not to violate the constitutional prohibition of double jeopardy. The reason for interrupting the *Gori* trial was less com-

---

2. Homicide by misadventure is a defense to the charge of murder. Commonwealth v. Flax, 1938, 331 Pa. 145, 200 A. 632.

pelling than the reason for setting aside the guilty plea here. But the common and decisive consideration was the judgment of the trial court in both cases that fairness to the accused dictated a discontinuance of the criminal proceeding after jeopardy had attached to be followed by a second proceeding during which the questionable procedure would be eliminated or corrected.

Also relevant is Bryan v. United States, 1950, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335. There the accused had been convicted on evidence that was insufficient to sustain a conviction. The Supreme Court held that the prohibition against double jeopardy did not prevent a new trial, even though the first trial should have been terminated by an acquittal.

Wade v. Hunter, 1949, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974, is also an instructive case. A wartime trial of a rape charge by a Third Army general court-martial began while the army was advancing into Germany. Some testimony was taken before the trial was continued to permit the attendance of additional witnesses. Thereafter, troop movements were such that the Third Army was no longer in the area and the resumption of its court-martial was deemed impracticable. Accordingly, the court was dissolved and an entirely new trial was conducted by a Fifteenth Army court-martial. The accused was convicted despite his plea of double jeopardy. The Supreme Court concluded that the prohibition against double jeopardy had not been violated, reasoning that "a trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice." The court added that the determination whether trial should be terminated is to be made by taking "all circumstances into account" and not by "the mechanical application of an abstract formula." 336 U.S. at 690, 691, 69 S.Ct. at 838.

In the present case, it might well have constituted a denial of due process of law to proceed to sentence the accused for murder on a guilty plea once it appeared that the accused did not in fact admit to felonious conduct and indeed claimed that the shooting was accidental. Cf. United States ex rel. Smith v. Baldi, 1953, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549. Certainly, the conclusion of the trial judge that fairness to the accused dictated a trial at which his version of the facts could be considered on an open issue of guilt or innocence was reasonable and was made in the interest of justice. Under the *Gori* and *Wade* cases this is enough to prevent the bar of double jeopardy from precluding a trial after a judicially imposed change of plea from guilty to not guilty.

The judgment will be reversed.