**UNITED STATES of America,**

v.

**John M. HECHT, Appellant.**

No. 80–1916.

United States Court of Appeals, Third Circuit.

Argued Nov. 6, 1980.

Decided Jan. 19, 1981.

As Amended Nov. 23, 1981.

William C. McClure (argued), McClure & Watkins, P. C., Pittsburgh, Pa., for appellant.

Robert J. Cindrich, U. S. Atty., Paul J. Brysh (argued), Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before GIBBONS and WEIS, Circuit Judges and WHIPPLE, District Judge.*

## OPINION OF THE COURT

WHIPPLE, District Judge:

We review on this appeal the order of the district court denying appellant Hecht's motion to dismiss his indictment on four counts of federal income tax evasion as barred by the double jeopardy clause of the Fifth Amendment. This case raises two major issues: first, when circumstances justify the vacation of a guilty plea, and second, the impact of the double jeopardy clause on the prosecution of a case once a guilty plea has been accepted. Jurisdiction is premised on 28 U.S.C. § 1291.

## THE FACTS

Appellant John Hecht was indicted on February 5, 1980, by a federal grand jury sitting in the Western District of Pennsylvania on four counts of federal income tax evasion in violation of 26 U.S.C. § 7201.[1]

On March 27, 1980, appellant appeared before Judge Teitlebaum, retracted his initial plea of not guilty, and entered a plea of guilty to Count II in return for the promise

---

* Hon. Lawrence A. Whipple, United States District Judge for the District of New Jersey, sitting by designation.

1. In essence, the four counts alleged that, in his federal income tax returns for the calendar years 1973, 1974, 1975 and 1976, respectively, appellant had substantially under-reported his taxable income and therefore the amount of his tax liability. The alleged deficiencies in the amount of tax liability ranged from $6,205.72 for calendar year 1973, to $36,261.72 for calendar year 1976.

of the Government prosecutor to dismiss Counts I, III and IV after sentencing.

Sentencing was scheduled for April 24, 1980. At that time, appellant, as well as three character witnesses, testified in an effort to mitigate the sentence to be imposed. In response, Assistant United States Attorney Daley, who represented the Government, put Manuel Gonzalez, a Special Agent for the Internal Revenue Service, on the witness stand. At the close of this testimony Judge Teitlebaum engaged in an off-the-record conference with Hecht's probation officer. The judge then expressed doubt as to whether there was a sufficient factual basis for the plea on the record, and consequently directed that appellant's guilty plea be vacated and the case set for trial on all four counts. Both parties objected.

Prior to trial, appellant moved before Judge Bloch for dismissal of all four counts of the indictment.[2] Appellant argued that a trial on Count II would violate his rights under the double jeopardy clause of the Fifth Amendment because jeopardy had attached when the guilty plea was initially accepted by the trial court. Appellant also contended that pursuant to the plea agreement the remaining counts should have been dismissed when he appeared for sentencing before Judge Teitlebaum. Judge Bloch, however, found that appellant had in essence withdrawn his guilty plea at the sentencing proceeding, and thereby removed the jeopardy on Count II himself. Moreover, the judge found that because Hecht had broken his bargain with the government, the government was no longer bound to comply with the terms of the plea agreement to dismiss Counts I, III and IV. Accordingly, Judge Bloch denied the motion. This appeal followed. We reverse and remand for further proceedings in the district court.

On this appeal, appellant argues that he has unconstitutionally been placed in double jeopardy by the district court's sua sponte withdrawal of his guilty plea, and the consequent setting down of the case for trial. Appellant's claim involves two distinct questions. The first is whether, under Rule 11 of the Federal Rules of Criminal Procedure, the plea was properly set aside. The second is whether the double jeopardy prohibition of the Fifth Amendment prevents reprosecution or reimposition of the plea.

*The Guilty Plea*

Hecht denies that he withdrew his guilty plea at the sentencing proceeding, and further argues that the sentencing court erred in setting aside the plea without his consent. Consideration of this question necessarily starts with the well-settled proposition that a criminal defendant "does not have an absolute right under the Constitution to have his guilty plea accepted by the court." *North Carolina v. Alford*, 400 U.S. 25, 38 n.11, 91 S.Ct. 160, 168, 27 L.Ed.2d 162 (1970); *Lynch v. Overholser*, 369 U.S. 705, 719, 82 S.Ct. 1063, 1072, 8 L.Ed.2d 211 (1962).

In fact, Rule 11(f) admonishes the trial court that,

> Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

■ Thus, in obedience to Rule 11, we have held that where the factual basis for a guilty plea is seriously undermined, a trial judge may set aside that plea without the consent of the accused, and furthermore require the accused to stand trial. *U. S. ex rel. Metz v. Maroney*, 404 F.2d 233 (3d Cir. 1968), *reh. denied* (1968), *cert. denied*, 394 U.S. 949, 89 S.Ct. 1287, 22 L.Ed.2d 483 (1969). *See also Willett v. Georgia*, 608 F.2d 538, 540 (5th Cir. 1979), where the court held that a judge may commit a constitutional error if he accepts a guilty plea when defendant's admission of guilt is equivocal, and a sufficient factual basis for the plea is lacking.[3]

---

2. The case was re-assigned to Judge Bloch for trial because Judge Teitlebaum had read the pre-sentence report in preparation for sentencing.

3. *See also United States v. Ray*, 431 F.2d 1177 (9th Cir. 1970).

■ After a careful examination of the record, we are satisfied that a sufficient factual basis for the guilty plea was established and therefore the plea should not have been vacated.[4]

When, on March 27, Hecht tendered his guilty plea, the court read Count II to him and conducted an extensive colloquy regarding the factual underpinnings for the plea. The following excerpts are pertinent:

Q. That is the charge against you. Do you understand that charge?

A. Yes, your Honor.

Q. All right, will you tell me what you did, to make you guilty of that charge?

A. Well, your Honor, I took money as an executive of the corporation [5] and used it—let's say in bad business judgment; and I myself got nothing of it. I have nothing—let's say I used it for my own purposes.

Q. You took corporate money and used it for your own purpose of making bad investments?

A. Yes, through the business like; yes, your Honor.

Q. But, you invested it for yourself, not for the corporation?

A. No, your Honor. I invested it not for myself, but I used the corporation money to make the investment.

Q. And in whose name did you make the investment?

A. Well, I just used in in my own name.

Q. In other words, you invested it in your own name?

A. Yes, in a sense, without any—

Q. What did you invest it in?

A. A bar and hotel in Coraopolis.

Q. And it was a leased bar?

A. Yes, your honor.

Q. In whose name was the lease? Yours or the corporation's?

A. The corporation. Another corporation.

Q. A different corporation?

A. Yes, sir.

Q. Was it your corporation?

A. No, I wasn't part of it.

Q. In other words you used the money to lease the premises?

A. Well, to use the expression, I financed it.

Q. You financed that bar for somebody else?

A. Yes.

Q. But it was you that financed it and not the corporation?

A. That is right.

Q. Who were you financing it for?

A. It was called Jinks Corporation.

Q. Yes, but who was Jinks Corporation?

A. One, the President was James Williams and later on with another fellow by the name of Thomas Loney.

Q. What was your understanding with them, if anything?

A. Let's say I was making a bad investment, primarily.

Q. In other words, you had made the investment and now you were trying to save it with corporate funds?

A. That is correct, sir.

MR. DALEY: Your Honor, if I might clarify the factual setting. Mr. Hecht was Vice-President and General Manager of a local music company; and that in that position, he embezzled large sums of money he did not report on his income tax returns. So that is the money that he is talking about.

Q. Is that what happened?

A. Yes, I took the corporation's money to make the investment.

---

4. We specifically note that the other requirements of Rule 11 regarding the validity of a guilty plea have been satisfied, and in any event are not in dispute.

5. Hecht is referring to Harrison Music Company, of which he was Vice President and General Manager.

Q. But, you did take the corporation's money without paying any tax on it?

A. Yes, sir.

\* \* \* \* \* \*

Q. All right, why did you make that plea arrangement?

A. Well, let's say, physically, it has upset me quite a bit. My mental health hasn't been good. My physical health hasn't been good as a net result of it, and I don't feel I could go through the trauma.

Q. But, you are guilty, aren't you, of the offense?

A. Yes.

Q. You are not pleading guilty just to avoid a trial?

A. No, your Honor.

Later, at the April 24 sentencing hearing, Hecht introduced three character witnesses as well as his own testimony, ostensibly in an effort to procure a more lenient sentence. Hecht reiterated that he had taken cash from Harrison Music Co. and made personal advances to Jinks Co. Hecht further testified that an initial $10,000 loan to Jinks was authorized by Harrison under normal company practices; that loan was made by check and recorded on Harrison's books. However, Hecht admitted that when it became clear that Jinks would not repay the loan, he advanced Harrison's money to it in a personal capacity. Hecht maintained that he never deposited this money in his own bank account, but instead gave it directly to Jinks. He also acknowledged that he in fact admitted taking the money to the owner of Harrison, and furthermore conveyed his house, his pension share, and his insurance policy to Harrison in an attempt at restitution.

Hecht's statements regarding the disposition of the cash he took from Harrison were not corroborated by the Internal Revenue Service agent called by the Government to testify at the sentencing hearing. Rather, Mr. Gonzalez, the agent, testified that Jinks' books showed no receipt of any large cash deposits at the time Hecht allegedly embezzled from Harrison. At the close of this testimony, and after an off-the-record conference with Hecht's probation officer, Judge Teitlebaum stated that he was unconvinced that Hecht had committed tax fraud. He thereupon vacated the guilty plea, albeit over the objections of appellant's counsel and the Government, as well as appellant's protestations of culpability. The following excerpts are pertinent:

THE COURT: All right, I am going to order the plea of guilty be withdrawn and we will set it up for trial by jury. Because if your version of this is correct, you didn't embezzle any money. You didn't even receive any income and you don't owe any taxes. Therefore, you couldn't have committed a tax fraud.

\* \* \* \* \* \*

From what you are saying, if that version be correct—I asked you originally as to whether you did embezzle the money and you said you did, as I recall it. I don't have the transcript here, but that was my recollection of what it is. That you told me enough to indicate that you had violated the tax laws.

What you are saying now, is that you loaned the companies money; it was bad business judgment. I don't understand why anybody because of that would give up his house and his insurance policy to try to make restitution. But, that is what you say you did. If that is what you did, then you don't owe any taxes. You couldn't have committed tax fraud. I am not saying that is what is going to come out at trial, because the government will be entitled then to prove their side of the case.

But, I don't feel it is fair for me to impose sentence in view of what you said here today.

MR. DULAC: Your Honor, on behalf of the client, I would only like to say, that as I stated before—

THE COURT: You see, you understand. "I plead guilty, but I didn't do it."

MR. DULAC: I understand. However, again, an absolute admission of guilt is not the sole determinant of what a guilty plea is.

THE COURT: There must be a factual basis of guilt for me to accept a plea of guilty. Mr. Hecht has said that he loaned money; that he used bad judgment and that for some reason he used his personal wealth, personal money to try to pay it back. But, he really didn't owe it. If he did owe it, it wasn't income.

\* \* \* \* \* \*

MR. DALEY: May I ask a few questions of the Defendant, you Honor?

THE COURT: Yes.

MR. DALEY: Mr. Hecht, you admit, do you not, that the sums of money you took from the corporation were in the form of cash?

THE DEFENDANT: Yes.

MR. DALEY: You had no authority to make loans beyond the established procedures of the corporation, which required recordation of those loans on the books of the corporation?

THE DEFENDANT: I admit that. I admit that.

MR. DALEY: So you had no authority to make these so-called loans to the Jenks [sic] Corporation?

THE DEFENDANT: I admitted that. I had authority within a certain degree.

THE COURT: Mr. Daley, that still doesn't make it taxable income. He might have breached his trust with his company. But, if he actually took that money and gave it to that Jenks [sic] Company, and didn't get it himself, or used it for some other purpose, it wasn't taxable income. I am not going to take this plea as long as he says he didn't get the money.

Now, the jury may not believe his version, and that is a different matter. But, as far as I am concerned, if he gave that money—unless there was a real embezzlement, unless he took that money and used it for some personal purpose, I just can't take the plea. That is why I am vacating it. We will set it down for trial by jury.

■ Notwithstanding any testimony that was adduced at the sentencing hearing, the conduct admitted by Hecht in this case clearly falls within the charge to which he pleaded guilty. At the plea hearing, the trial court was satisfied that Hecht's conduct constituted criminal behavior sufficient for acceptance of a guilty plea, despite Hecht's assertions that he funneled the money he "took" from Harrison Music Co. directly to Jinks. Hecht never deviated from this position at the sentencing hearing but in fact admitted and reiterated his guilt several times, even after the plea was vacated. Hecht's recharacterization of his conduct from "embezzlement" to "bad judgment" does not change the reality of what was done, and therefore does not afford good grounds for vacating the plea. It was therefore incorrect to construe Hecht's statements as protestations of innocence. In any event, even protestations of innocence in face of a guilty plea supported by a strong factual basis do not eviscerate the validity of the plea. *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

■ Rule 11 lodges a discretion in the court whether to accept or reject (or in this case, vacate) a plea; such discretion, however, must be exercised in relation to the composite of factors which constitute the case. *Griffin v. United States*, 405 F.2d 1378, 1380 (D.C.Cir.1968). Clearly, here, Hecht was fully apprised of the charges against him; he was competently represented by counsel, he tendered his plea voluntarily and with full knowledge of the consequences, and admitted taking the money without authority several times. *See Paradiso v. United States*, 482 F.2d 409, 413–415 (3d Cir. 1973); *see also Davis v. United States*, 470 F.2d 1128 (3d Cir. 1972).

The circumstances of this case do not remotely resemble the extreme situation mandating vacation of the guilty plea in *U. S. ex rel. Metz v. Maroney, supra,* 404 F.2d 233 (3d Cir. 1968), in which the defendant, who pled guilty to murdering his wife, subsequently asserted that he intended only to shoot himself, and that the gun went off accidentally.

Somewhat disingenuously, the dissent attempts to change the focus of the relevant

inquiry from the question whether a guilty plea entered in a plainly valid Rule 11 proceeding should be vacated, and a plea bargain undone, to the question whether it was an abuse of discretion to refuse to accept a guilty plea. That is not the question before us. The guilty plea to one count was accepted, and we review an order vacating it, not a hypothetical order refusing it. Nor are we as convinced as the author of the dissent appears to be that the vacation of the guilty plea was done in the defendant's best interest. The effect of that ruling was to expose the defendant to charges for three tax years rather than the one to which he pleaded guilty. No doubt the defendant is concerned that if he must plead guilty, or is found guilty, on three years rather than one his civil tax difficulties may be magnified as well.

Accordingly, the trial court erred in vacating the plea, and the plea of guilty to Count II should be reinstated.

*Double Jeopardy*

█ Reinstatement of the plea of guilty will not violate the double jeopardy prohibition of the Fifth Amendment. The Supreme Court early observed that the object of the double jeopardy clause is to protect a defendant who has been once convicted and punished for a particular crime from the possibility of further punishment by being again tried or sentenced for the same offense. *Ex parte Lange*, 85 U.S. 163 (18 Wall.), 21 L.Ed. 872 (1874); *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889); *see also U. S. v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975).

█ By contrast, where there is no threat of either multiple punishment or successive prosecutions, the double jeopardy clause is not offended. Thus, the Supreme Court has held that the double jeopardy clause is not implicated when the Government appeals from a judgment of acquittal or dismissal of indictment entered by a trial court after a jury verdict of guilty. *U. S. v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1974). The critical factor is that if the Government prevails in its ap-

peal, the defendant will not twice be tried, and therefore will not twice be put in jeopardy for the same offense. Rather, the jury's guilty verdict would be reinstated. *U. S. v. Wilson, supra; see U. S. v. Schoenhut*, 576 F.2d 1010, 1018 n.7 (3d Cir.), *cert. denied*, 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 421 (1978).

█ Under this rationale, reinstatement of the guilty plea following the correction of an error of law in the case *sub judice* would not violate the constitutional strictures against double jeopardy. Undeniably, a defendant is considered to be convicted by the entry of his plea of guilty just as if a jury had found a verdict of guilty against him, and jeopardy therefore attaches with acceptance of his guilty plea. *United States v. Jerry*, 487 F.2d 600 (3d Cir. 1973). When this "conviction" is erroneously overturned by the trial court, however, reinstatement of the "conviction" or plea of guilty will not subject the defendant "to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. U. S.*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–224, 2 L.Ed.2d 199 (1957). *See also Abney v. U. S.*, 431 U.S. 651, 661, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977).

█ ·Nor does a remand for resentencing violate defendant's right to have his case heard by a particular tribunal. True, the Supreme Court has recognized a defendant's valued right to have his trial completed by a particular tribunal. *See, e. g., Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1948). Yet that right is not absolute. As Justice Harlan observed in *United States v. Jorn*, 400 U.S. 470, 483–484, 91 S.Ct. 547, 556–557, 27 L.Ed.2d 543 (1971):

Certainly it is clear beyond question that the Double Jeopardy Clause does not guarantee a defendant that the Government will be prepared, in all circumstances, to vindicate the social interest in law enforcement through the vehicle of a sin-

gle proceeding for a given offense. Thus, for example, reprosecution for the same offense is permitted where the defendant wins a reversal on appeal of a conviction. *United States v. Ball*, 163 U.S. 662 [16 S.Ct. 1192, 41 L.Ed. 300] (1896); *see Green v. United States*, 355 U.S. 184, 189 [78 S.Ct. 221, 224, 2 L.Ed.2d 199] (1957). The determination to allow reprosecution in these circumstances reflects the judgment that the defendant's double jeopardy interests, however defined, do not go so far as to compel society to so mobilize its decisionmaking resources that it will be prepared to assure the defendant a single proceeding free from harmful governmental or judicial error.

Moreover, to require dismissal of Count II because of appellant's misgivings that the "atmosphere" of the proceedings in the district court "may not be capable of reconstruction at a later time and before a second tribunal" would bestow on appellant an undeserved windfall. *Cf. U. S. v. Martinez*, 486 F.2d 15 (5th Cir. 1973).[6]

Reinstatement of the guilty plea places this case in the status quo ante that existed before the plea was erroneously vacated. The terms of the plea agreement negotiated by Hecht and the Government provided that in return for Hecht's plea of guilty to Count II of the indictment, the Government, after sentencing, would move to dismiss the remaining counts.[7] Accordingly, the order appealed from will be reversed and the case remanded with instructions to reinstate the guilty plea and to sentence on Count II.

WEIS, Circuit Judge, dissenting.

The majority concedes the well-settled proposition that a criminal defendant does not have an absolute constitutional right to have his guilty plea accepted by a court. *North Carolina v. Alford*, 400 U.S. 25, 38 n.11, 91 S.Ct. 160, 168 n.11, 27 L.Ed.2d 162 (1970). This holding was repeated in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), where the Chief Justice wrote, "A court may reject a plea in the exercise of sound judicial discretion." *Id.* at 262, 92 S.Ct. at 498.

The limits of this discretion have not been delineated in the case law to any great extent. In attempting to do so, appellate courts must acknowledge the awesome power of sentencing entrusted to district judges and the tremendous responsibility placed on them to prevent manipulation of the court's process. Imposing punishment is agonizing enough when evidence of guilt is clear. But when a district judge has doubts about a defendant's culpability, an appellate tribunal's directive that sentence must be imposed is particularly troublesome. As the Court of Appeals for the Eighth Circuit remarked in *United States v. Bettelyoun*, 503 F.2d 1333 (8th Cir. 1974), "we are in an area where the district court necessarily possesses the greatest discretion because of the need for assurance that a guilty plea proceeding be completely safeguarded to protect the unknowing defendant." *Id.* at 1336–37.

The majority holds that the defendant's plea should not have been vacated because it is "satisfied that a sufficient factual basis for the guilty plea was established," Majority Opinion at 654, and the district court erred in construing it to be an *Alford* plea, *id.* at 656–657. Moreover, the majority finds an abuse of discretion in rejecting an *Alford* plea.

A review of the record convinces me the district judge rejected this plea because he was not satisfied it had a basis in fact.

---

**6.** In *U. S. v. Martinez*, defendant's guilty plea to one count of a four count indictment had been rejected by the trial court, and defendant was subsequently convicted by a jury on several counts. The Fifth Circuit held that the trial court had not rejected the defendant's guilty plea for a "good reason," and accordingly directed the trial court to set aside the guilty verdict and substitute an adjudication of guilt on the count pleaded, with remand for sentencing on that count alone.

**7.** The Government, having received what it bargained for, is under an obligation to dismiss the remaining counts after sentencing on the plea. *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

There was no misconception; he understood he could accept a guilty plea coupled with a protestation of innocence. As with any other guilty plea, however, the district judge was bound by the factual basis requirement of Fed.R.Crim.P. 11(f).

After studying the testimony, I conclude that the district judge did not err in finding the factual basis was insufficient. For this reason, we should not reach the question of when an *Alford* plea must be accepted, although I state my views because the majority has addressed it. In my judgment, the district judge did not err in construing this to be an *Alford* plea and did not abuse his discretion in rejecting it.[1]

Although the trial court has discretion to accept or reject a plea, the sentencing judge "should not enter judgment upon [a guilty plea] without making such inquiry as shall satisfy [him] that there is a factual basis for the plea." Fed.R.Crim.P. 11(f). Thus, rejection of a guilty plea on this ground is proper. As the majority notes, we have held that even in the absence of a defendant's consent, a guilty plea may be set aside when doubts as to its validity trouble the sentencing court. *United States ex rel. Metz v. Maroney*, 404 F.2d 233 (3d Cir. 1968), *cert. denied*, 394 U.S. 949, 89 S.Ct. 1287, 22 L.Ed.2d 483 (1969). *See also Willett v. Georgia*, 608 F.2d 538 (5th Cir. 1979).

On this record, I find no abuse of the broad discretion entrusted to the sentencing judge nor any reason to differ with his statement:

> "I just can't possibly accept the plea of guilty merely on this kind of a basis, when I am also presented with all the evidence I have heard here this morning. I just feel we had better make sure this man is guilty of something before we impose a criminal sentence.... If he didn't violate the law, I could not in good conscience impose a criminal sentence."

App. at 53–55.

Hecht has been indicted for willfully attempting to evade federal income taxes in violation of 26 U.S.C. § 7201 (1976), the same offense charged in *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). There, in reviewing Rule 11's requirements, the Supreme Court said, "The judge must determine 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.'" *Id.* at 467, 89 S.Ct. at 1171, *quoting* Advisory Committee Notes. Here, too, the district judge was required to determine whether the conduct Hecht admitted violated § 7201. *See* 8 Moore's Federal Practice ¶ 11.03[3], at 11–72 (1980).

The elements of a § 7201 offense are (1) willfulness, (2) the existence of a tax deficiency, and (3) an affirmative act constituting an evasion or attempted evasion of the tax. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965). The second element—the existence of a tax deficiency—depends upon whether Hecht may lawfully be charged with a taxable gain on the basis of the cash loans to Jinks Corporation. It is true that "embezzled funds are to be included in the 'gross income' of the embezzler in the year in which the funds are misappropriated under ... § 61(a) of the Internal Revenue Code of 1954." *James v. United States*, 366 U.S. 213, 213–14, 81 S.Ct. 1052, 1052, 6 L.Ed.2d 246 (1961). The real issue, however, is not whether Hecht embezzled the funds, but whether he "ha[d] such control over [them] that, as a practical matter, he derive[d] readily realizable economic value ...." *Id.* at 219, 81 S.Ct. at 1055, *quoting Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955).

The district judge had two colloquies with the defendant, one at the time he changed his plea, and another at the time of sentencing. At the former, the judge and defendant were talking at cross purposes. The critical issue was whether the defendant misappropriated the money and invested it

---

1. I find no substantial difference between the standard applied when the guilty plea is entered and that governing "vacation" before sentencing. The plea is not final until judgment of sentence is imposed. *See* Fed.R.Crim.P. 11(f).

for his own gain, or whether he had taken the money, albeit without authority, and loaned it to another corporation on behalf of his employer. Although the latter course of action might have exposed the defendant to a claim for restitution by his employer, culpability for tax evasion would be doubtful. *See Sansone v. United States, supra; James v. United States, supra.*

At the sentencing hearing, the defendant testified that none of the money had been for his personal use and that he had delivered his employer's money to keep the Jinks business going. He was permitted to lend money to customers, and in this instance, "I was chasing a bad debt." App. at 45. The Internal Revenue agent who testified did not produce any evidence that the defendant had used the money for himself.

At the conclusion of the testimony, the trial judge asked defense counsel whether he was satisfied that the defendant had committed an offense. Counsel replied, "In total honesty; no I am not." App. at 50. Counsel added that although he did not agree with defendant's decision to plead guilty, he was willing to live with it, and argued that an admission of guilt "is not one of the criteria for a guilty plea." *Id.* at 50.

In retrospect, it is apparent that at the first hearing, the defendant's statements were inconsistent. At one point he said that the investments were on his own account. At other times he stated the money was used for his employer's benefit. Nevertheless, the district judge understood the defendant to have acted on his own behalf. At the sentencing hearing, however, it became clear that the defendant's position was that he did not use the money for his own benefit. It was at that juncture that the district judge vacated the plea. Given these circumstances, I concur with his determination that the plea was not adequately supported on the record.

Even if the factual basis for this plea were adequate, I would not join in the judgment. I cannot accept the majority's conclusion that the district court's interpretation of the defendant's statements as a

protestation of innocence was error. At both the change of plea and sentencing hearings, *see* Majority Opinion at 654–656, the defendant equivocated about whether he had invested the money on his own account or on behalf of his employer, and he repeatedly denied that he derived any personal benefit from the "embezzled" funds. In the context of tax fraud, the district court's construction of these statements was not erroneous.

A party contending that a trial judge abused his discretion in refusing to accept a guilty plea bears a heavy burden. That burden is not met simply by showing that a valid *Alford* plea was offered. The majority of circuits that have addressed the question hold that while a district court may accept such a plea, it is not an abuse of discretion for it to refuse to do so. In *United States v. Bednarski*, 445 F.2d 364 (1st Cir. 1971), also an income tax case, the court rejected an attempt to force a district judge to accept a guilty plea. The court noted the need to insure public confidence in the judicial process and said that "a judge may properly not wish to put the court in the position of being an apparent partner to a circumstantial web woven by the Internal Revenue Service to fine and jail a person who has not been tried and protests his innocence." *Id.* at 366.

In *United States v. O'Brien*, 601 F.2d 1067 (9th Cir. 1979), the court declined to find an abuse of discretion when a plea was rejected because a defendant refused to admit guilt. *United States v. Navedo*, 516 F.2d 293 (2d Cir. 1975), upheld a refusal to accept a guilty plea where gaps in a showing of defendant's participation in a conspiracy were sufficient to justify the trial judge's "good faith belief" that a sufficient factual basis had not been developed. Other cases finding no abuse of discretion include *United States v. Biscoe*, 518 F.2d 95 (1st Cir. 1975); *United States v. Bettelyoun, supra; United States v. Melendrez-Salas*, 466 F.2d 861 (9th Cir. 1972); and *United States v. Ray*, 431 F.2d 1177 (9th Cir. 1970).

In *McCoy v. United States*, 363 F.2d 306 (D.C.Cir.1966), the court stated that a guilty plea should not be refused without "good

reason," but held that the lower court had good reason to reject a plea in view of the defendant's claim of innocence. *Cf. Griffin v. United States*, 405 F.2d 1378 (D.C.Cir. 1968); *United States v. Davis*, 516 F.2d 574 (7th Cir. 1975). *But see United States v. Gaskins*, 485 F.2d 1046 (D.C.Cir.1973). These courts, therefore, would support the district judge in his exercise of discretion in this case.

In addition to the concern that an innocent person not be sentenced, courts must recognize the need for finality of guilty pleas. If the factual basis for a plea has not been satisfactorily demonstrated on the record, a defendant having second thoughts about his decision, or dissatisfied with his sentence, will attempt to have the judgment set aside. *United States v. Bednarski, supra.* In *United States v. Carter*, 619 F.2d 293 (3d Cir. 1980), we called to the district courts' attention the necessity for compliance with Rule 11 to assure finality. I fear that the majority opinion here does not further the aims we expressed there.

In summary, I believe that the district judge did not abuse his discretion in declining the plea, and I agree with his view that a proper factual basis was not presented. Accordingly, I would affirm the order of the district court.