**UNITED STATES of America,**

v.

**William YEDNAK.**

**Criminal No. 01–141.**

United States District Court,
W.D. Pennsylvania.

Feb. 12, 2002.

James H. Love, U.S. Attorney's Office, for U.S.

W. Penn Hackney, Fed. Public Defender's Office, Pittsburgh, PA, for defendant.

## MEMORANDUM

LANCASTER, District Judge.

On July 25, 2001, a federal grand jury returned a multi-count indictment against defendant, William Yednak, including two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Counts Nine and Twelve) and one count of carrying a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count Ten). At a hearing held on November 30, 2001, Yednak changed his initial plea of not guilty and, pursuant to a plea agreement, entered a plea of guilty to seven counts of the indictment, including Counts Nine, Ten, and Twelve.

At the November 30 hearing, the court expressed concern over whether there was an adequate factual basis to support the guilty plea as to Counts Nine, Ten and Twelve. Consequently, the court accepted the guilty plea conditional upon the court's satisfactory resolution of two outstanding issues: (1) whether conviction on both Counts Nine and Twelve, possession of a firearm by a convicted felon, would constitute two convictions for the same crime in violation of the double jeopardy clause of the Fifth Amendment to the United States Constitution and (2) whether there was an adequate factual basis to support Yednak's plea of guilty to carrying a firearm during and in relation to a drug-trafficking crime—Count Ten.

After taking the matter under advisement and, for the reasons that follow, the court will not accept Yednak's guilty plea as to Counts Nine, Ten, and Twelve and will reject the plea agreement between the government and Yednak in its entirety.

## I.  BACKGROUND

At the November 30, 2001 hearing, the government made the following proffer as to the factual predicate for Counts Nine, Ten, and Twelve of the indictment.

Regarding Counts Nine and Twelve, possession of a firearm by a convicted felon, the government stated that it would show that on May 7, 2001, another defendant in this case, Lara Casaldi, went to a pawn shop at Yednak's insistence and acquired a chrome-plated, black-handled, Smith & Wesson 9 millimeter handgun for Yednak's use. Thereafter, the gun was in Yednak's possession.

On May 10, 2001, a PNC Bank branch was robbed by a masked robber brandishing what appeared to be a real weapon. The government stated that this gun had the appearance of the gun purchased by Casaldi for use by Yednak. Casaldi would testify at trial that the bank robber was Yednak's brother, defendant Patrick Yednak, and that William Yednak aided and abetted Patrick in that robbery. William

Yednak was prohibited from possessing a firearm due to previous felony convictions. This conduct is the basis of the first count of possession—Count Nine.

At approximately 1:00 a.m. the next day, May 11, 2001, the police stopped Casaldi's car, which was used in the PNC Bank robbery. William Yednak was driving, Casaldi was in the front seat, and a third individual was in the back seat. The police found the 9-millimeter handgun purchased from the pawnshop under the seat of the vehicle. This is the factual basis underlying the second count of possession—Count Twelve.

Regarding Count Ten, carrying a firearm during and in relation to a drug-trafficking crime and/or possession of a firearm in furtherance of a drug-trafficking crime, the government stated as follows. When the police stopped Casaldi's vehicle on May 11, 2001, they found a small quantity of cocaine and less than 100 grams of heroin within Yednak's possession and control. As set forth above, the 9-millimeter handgun was found under the seat. The government stated that after the May 10, 2001 PNC Bank robbery, Yednak and Casaldi took the gun to Duquesne, Pennsylvania, to meet with the drug supplier who supplied them with the heroin and cocaine. They returned to Yednak's residence in McKeesport, Pennsylvania and stayed there until the early hours of May 11 when they agreed to give a third person a ride to housing projects in another neighborhood in McKeesport. At this time, Yednak had the heroin and the 9-millimeter handgun in his possession. According to the government, Yednak took the gun with him because he was going to what he considered to be a dangerous neighborhood while in possession of heroin.

When asked by the court, Yednak stated that he agreed with the government's summary of what he did.

## II. *DISCUSSION*

The court questions whether there is an adequate factual basis to support Yednak's plea of guilty as to two counts of possession of a firearm by a convicted felon (Counts Nine and Twelve) and one count of carrying a firearm during and in relation to a drug-trafficking crime and/or possession of a firearm in furtherance of a drug-trafficking crime (Count Ten). Upon consideration of the record, arguments of counsel, and applicable law, the court is not satisfied that Yednak's guilty plea as to these counts is supported by the facts and, therefore, rejects the plea.

It is well-settled that a criminal defendant " 'does not have an absolute right under the Constitution to have his guilty plea accepted by the court.' " *United States v. Hecht,* 638 F.2d 651, 653 (3d Cir.1981) (quoting *North Carolina v. Alford,* 400 U.S. 25, 38 n. 11, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)); *see also Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In this regard, Fed.R.Crim.P. 11(f) directs that:

> Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

Fed.R.Crim.P. 11(f). In obedience to Rule 11, the Court of Appeals for the Third Circuit has held that "where the factual basis for a guilty plea is seriously undermined, a trial judge may set aside that plea without the consent of the accused, and furthermore require the accused to stand trial." *Hecht,* 638 F.2d at 653.

Whether to accept or reject a plea of guilty is within the court's discretion. *Id.* at 656; *see also Santobello,* 404 U.S. at

262, 92 S.Ct. 495. The court, however, must exercise such discretion "in relation to the composite of factors which constitute the case." *Hecht*, 638 F.2d at 656.

With these principles in mind, we address each of the crimes at issue in turn.

### A. *Counts Nine and Twelve: Possession of a Firearm by a Convicted Felon*

■ 18 U.S.C. § 922(g)(1) makes it unlawful for a convicted felon to possess a firearm. Yednak, a convicted felon within the meaning of the statute, was indicted under this provision for possessing the same handgun on two consecutive days, May 10 and May 11, 2001. The issue is whether these two instances of possession of the same firearm were separate criminal acts.

Although the Court of Appeals for the Third Circuit has not addressed this precise question, other courts of appeals have held that "possession" under this statute is a "course of conduct" and that "by prohibiting possession Congress intended to punish *as one offense* all of the acts of dominion which demonstrate a continuing possessory interest in a firearm." *United States v. Jones*, 533 F.2d 1387, 1391 (6th Cir.1976) (emphasis added); *see also United States v. Horodner*, 993 F.2d 191, 193 (9th Cir.1993) (same); *United States v. Rivera*, 77 F.3d 1348, 1351 (11th Cir.1996) (per curiam) (same). Therefore, "[w]here there is no proof that possession of the same weapon is interrupted, the Government may not arbitrarily carve a possession into separate offenses." *Rivera*, 77 F.3d at 1351. Indeed, to do so "would result in a multiplicitous indictment, creating the risk of multiple convictions and punishments for a single offense in violation of the Double Jeopardy Clause." *Id.* at 1352.

In *United States v. Jones*, for example, Jones was charged with three separate counts of unlawful possession of a firearm based on the following three events: he purchased a revolver in 1970; in March, 1973, police officers conducting a driver's license check stopped Jones in his vehicle and saw the same revolver lying on the seat beside him; and in December, 1973, police officers executing a search warrant in Jones' store asked Jones where his gun was, and he told them it was behind the counter. *See Jones*, 533 F.2d at 1389–90.

The court rejected the government's argument that Jones possessed the revolver on three separate occasions and, therefore, committed three separate offenses. Noting the government's illogical position, the court remarked:

> With equal propriety the Government might have charged Jones with possession on more than 1100 separate days and obtained convictions to imprison Jones for the rest of his life.

*Id.* at 1391. Because the government offered no proof that there was any interruption in Jones' possession of the gun, the court concluded that Jones could be convicted upon only one count of possession. *Id.* at 1392; *see also Horodner*, 993 F.2d at 193 (holding that two convictions for unlawful possession of the same firearm on two occasions ten days apart was inappropriate where the possession was one uninterrupted course of conduct).

We find the reasoning of these cases persuasive and will apply the principles set forth there to this case. Here, the government seeks two convictions under section 922(g)(1) based on the fact that Yednak possessed the same gun on two separate occasions—once either during or immediately after the May 10, 2001 bank robbery and again less than a day later when the car he was driving was pulled over in the early morning hours of May 11. As in

*Jones* and *Horodner,* however, the government has not offered anything to indicate that Yednak's possession of the gun was interrupted between these two events. Rather, the government's proffer merely shows that Yednak had the gun on May 10 and that he still had the gun on May 11. Under these circumstances, we find that there is no factual basis to support *two* separate counts of possession under section 922(g)(1). Indeed, to hold otherwise, *i.e.,* to accept Yednak's plea and enter judgment of conviction on both counts, would result in multiple convictions for the same offense in violation of the Double Jeopardy clause of the Fifth Amendment. *See Horodner,* 993 F.2d at 193–96; *Rivera,* 77 F.3d at 1352.

B. *Count Ten: Violation of 18 U.S.C. § 924(c)*

We next examine whether there is a factual basis underlying Count Ten of the indictment against Yednak. Count Ten charges Yednak with carrying a firearm during and in relation to a drug-trafficking crime or, alternatively, possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c).[1] We find that the facts do not support a guilty plea as to this count under either of these theories.[2]

1. *Carrying a Firearm During and in Relation to a Drug–Trafficking Crime*

Section 924(c) makes it unlawful to carry a firearm during and in relation to a drug-trafficking crime. The statutory definition of "drug-trafficking crime" is broad enough to include simple possession of illegal drugs—the underlying drug-trafficking crime in this case. *See* 18 U.S.C. § 924(c)(2) (stating that the term "drug trafficking crime" means, *inter alia,* any felony punishable under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*).[3]

We first examine whether the facts support a conclusion that Yednak "carried" a firearm within the meaning of this prong. In *Muscarello v. United States,* 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998), the Supreme Court held that the statutory definition of "carry" applies to a person "who knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car, which the person accompanies." *Id.* at 126–27, 118 S.Ct. 1911. The Court explained that this definition best serves the basic purpose of the statute—"to combat the 'dangerous combination' of 'drugs and guns.'" *Id.* at 132, 118 S.Ct. 1911 (quoting *Smith v. United States,* 508 U.S. 223, 240, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993)).

Here, the record indicates that the police found Yednak's gun underneath the seat of the car he was driving and that Yednak knowingly placed it there. Under the definition set forth in *Muscarello,* these facts support a finding that Yednak "carried" a firearm as contemplated by section 924(c).

Our inquiry, however, does not end there. We next must determine whether the facts support a finding that Yednak carried the firearm "during and in relation

---

**1.** A person convicted of violating section 924(c) is subject to a minimum five-year prison term which must run consecutively to any other term of imprisonment imposed for any other crime. 18 U.S.C. § 924(c)(1).

**2.** Section 924(c) also makes it unlawful to use a firearm during and in relation to a drug-trafficking crime. Count Ten does not charge Yednak with unlawful use.

**3.** Specifically, Count Eleven of the indictment charges Yednak with unlawful possession of less than 100 grams of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. § 844.

to" a drug-trafficking crime. The Supreme Court in *Muscarello* explained that Congress added the "during and in relation to" language "in part to prevent prosecution where guns 'played' no part in the crime." *Id.* at 137, 118 S.Ct. 1911; *see also id.* at 139, 118 S.Ct. 1911 ("The limiting phrase 'during and in relation to' should prevent misuse of the statute to penalize those whose conduct does not create the risks of harm at which the statute aims.").

Similarly, in *Smith v. United States*, the Supreme Court stated that the phrase "in relation to," at a minimum, "clarifies that the firearm must have some purpose or effect with respect to the drug-trafficking crime." 508 U.S. at 238, 113 S.Ct. 2050. The carrying of a firearm is not "in relation to" a drug crime if the firearm's presence is "coincidental or entirely 'unrelated' to the crime." *Id.* (quoting *United States v. Stewart*, 779 F.2d 538, 539 (9th Cir. 1985)). Instead, "the gun at least must 'facilitat[e], or ha[ve] the potential of facilitating,' the drug trafficking offense." *Id.* (quoting *Stewart*, 779 F.2d at 540) (alterations in original); *see also United States v. Loney*, 219 F.3d 281, 289 (3d Cir.2000) (stating that "the gun's relationship to a crime should not be 'accidental' ").

Here, the record is devoid of facts that would support a finding that Yednak's carrying of the handgun was "in relation to" his possession of heroin. As the record establishes, Yednak was giving a third party a ride to housing projects in McKeesport when he was stopped by the police. He was not going to visit his drug supplier or anyone else in connection with the

drugs. Rather, he simply brought the drugs with him for personal use. At the same time he had a gun under the seat. Under these facts, the court fails to see any nexus between the gun and the drug crime as required to support a conviction under section 924(c). To the contrary, the record indicates that Yednak acquired and possessed the gun to assist him in the commission of bank robberies, including the PNC Bank robbery less than a day before. There is nothing on the record, other than the government's suggestion, to support a finding that Yednak was carrying the gun for any purpose related to the drugs.

Therefore, the court finds that there is no factual basis to support the guilty plea to Count Ten of the indictment insofar as it charges Yednak with carrying a firearm during and in relation to a drug-trafficking crime.

### 2. Possession of a Firearm in Furtherance of a Drug–Trafficking Crime

■ Count Ten alternatively alleges that Yednak violated section 924(c) by possessing a firearm in furtherance of a drug-trafficking crime. We find that the facts also fail to support this allegation.

In 1998, Congress added language to section 924(c) specifically prohibiting possession of a firearm in furtherance of a drug-trafficking crime.[4] There is no question here that Yednak possessed a firearm within the meaning of this provision. The only issue is whether that possession was "in furtherance of" the drug-trafficking crime.

---

**4.** This amendment was in response to the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which had narrowly interpreted the meaning of "use" under the statute. *See United States v. Alaniz*, 235 F.3d 386, 389 (8th Cir.2000). In particular, *Bailey* held that unlawful "use" under section 924(c) did not encompass mere possession of a firearm during the commission of a crime; rather, the statute required active employment of the firearm in relation to the predicate offense. *See Bailey*, 516 U.S. at 143, 116 S.Ct. 501.

Several courts, including the Court of Appeals for the Third Circuit, have suggested that the "in furtherance of" standard is similar to, if not more stringent than, the "in relation to" component of the "carry" prong. *See United States v. Loney*, 219 F.3d at 287 (suggesting that "in furtherance of" is more stringent than "in relation to"); *see also United States v. Mackey*, 265 F.3d 457, 461 (6th Cir.2001) (noting that the legislative history indicates that Congress "intended the 'in furtherance of' limitation to be a higher standard than 'during and in relation to'"); *United States v. Iiland*, 254 F.3d 1264, 1274 (10th Cir.2001).[5] In assessing whether a defendant possessed a firearm in furtherance of a drug offense, pertinent factors include the type of drug activity, accessibility of the firearm, whether it was loaded, its proximity to drugs or drug profits and the circumstances in which it was found. *See Bressi v. United States*, No. Civ. A. 01–407, 2001 WL 395289, at *1 (E.D.Pa. Apr.5, 2001) (citing *United States v. Ceballos–Torres*, 218 F.3d 409, 414–15 (5th Cir.2000)). The "mere presence" of a firearm is not enough. *See Ceballos–Torres*, 218 F.3d at 414. Rather, "[w]hat is . . . required is evidence more specific to the particular defendant, showing that his or her possession actually furthered the drug trafficking offense." *Id.; see also Mackey*, 265 F.3d at 462 ("Congress intended a specific nexus between the gun and the crime charged.").

The government has made no such showing here. Rather, for the same reasons discussed in Section II.B.1, *supra*, an analysis of the relevant factors does not support Yednak's plea of guilty under this theory. For example, Yednak possessed the drugs for personal use only. Further, Yednak was not in the car for any reason related to the drugs; rather, he was driving a third party to another neighborhood. Moreover, an analysis of the surrounding circumstances indicates that Yednak acquired and thereafter possessed the gun to assist him in the commission of armed bank robberies, not to advance, promote, or otherwise "further" the possession of heroin at issue.

For these reasons, the court is not satisfied that a factual basis exists to support Yednak's guilty plea as to Count Ten of the indictment under either theory espoused by the government.

### C. The Court Must Reject the Plea Agreement in Its Entirety

Rule 11(e) makes clear that the court may accept or reject a plea agreement reached between the parties. Fed. R.Crim.P. 11(e)(2), (4). As with the guilty plea itself, the decision whether to accept or reject a plea agreement is within the court's discretion. *See, e.g., United States v. Greener*, 979 F.2d 517, 519 (7th Cir. 1992); *United States v. Carrigan*, 778 F.2d 1454, 1461 (10th Cir.1985).

The court, however, may only accept or reject a plea agreement in its entirety. It does not have the authority simply to reject those portions of the agreement with which it finds fault. *See United States v. Mukai*, 26 F.3d 953, 956 (9th Cir.1994)

---

**5.** If the "in furtherance of" standard is indeed more stringent than the meaning of "in relation to," there cannot be a factual basis to support the "possession in furtherance of" theory because we already have determined that the facts do not support Yednak's guilty plea under the less stringent "in relation to" prong. Thus, the "possession in furtherance" portion of Count Ten would fail for this reason alone. *See United States v. Iiland*, 254 F.3d 1264, 1271 (10th Cir.2001) ("[I]f the facts do not establish that a firearm was possessed 'during and in relation to' a drug crime, they will not satisfy the more stringent 'in furtherance of' language.").

(stating that "[i]f the court did not find the terms of [one paragraph of the plea agreement] appropriate, its only option was to reject the agreement in its entirety"); *United States v. Cunavelis,* 969 F.2d 1419, 1422 (2d Cir.1992) ("The district court may accept or reject a[ ] . . . plea [agreement], but it may not modify it.").

Here, the court has rejected Yednak's plea of guilty as to Counts Nine, Ten, and Twelve of the indictment. Because Yednak seeks to plead guilty to these counts pursuant to a plea agreement with the government, the court also must reject that plea agreement in its entirety.[6] As set forth above, the court cannot simply strike the sections of the plea agreement with which it has a problem.

## III. *CONCLUSION*

For these reasons, the court does not accept defendant William Yednak's plea of guilty as to Counts Nine, Ten, and Twelve of the indictment and rejects the plea agreement between Yednak and the government in its entirety. The court shall advise Mr. Yednak in open court that it is not bound by the plea agreement, shall afford him the opportunity to withdraw his guilty plea as to Counts One, Three, Seven, and Eleven of the indictment,[7] and shall otherwise comply with the requirements of Fed.R.Crim.P. 11(e)(4).

---

6. The rejection of this plea agreement does not preclude the court from accepting a guilty plea from Yednak at a later time if and when such plea conforms to the requirements of Rule 11. *See* Fed.R.Crim.P. 11 advisory committee's note.

7. Because the court has rejected Yednak's plea of guilty as to Counts Nine, Ten, and Twelve, there is no need for Yednak to withdraw his guilty plea as to those counts.