Irvin W. GILMORE

v.

Leroy ZIMMERMAN, Attorney General of the Commonwealth of Pennsylvania.

Civ. A. No. 85–2940.

United States District Court, E.D. Pennsylvania.

Oct. 10, 1985.

Emmanuel H. Dimitriou, Reading, Pa., for plaintiff.

Charles A. Haddad, Sp. Asst. Atty. Gen., Boyertown, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Petitioner Irvin W. Gilmore filed this petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 seeking to enjoin a state criminal proceeding pending against him. After reviewing Gilmore's petition, Magistrate Leomporra recommended that the petition for writ of *habeas corpus* be denied and dismissed without an evidentiary hearing. Judge Leomporra's Report and Recommendation was filed on August 27, 1985.

After reviewing the Magistrate's Report and Recommendation, petitioner's objections, and the circumstances giving rise to this petition, I agree with the Magistrate's conclusion that the petition for writ of *habeas corpus* must be denied; I do not, however, entirely, accept the Magistrate's analysis. On September 6, 1985, counsel for petitioner, Emmanuel H. Dimitriou, filed petitioner's objections to Judge Leomporra's Report and Recommendation and requested that I make a *de novo* determination as to the issues presented in the petition for writ of *habeas* corpus.

The facts giving rise to the petition are as follows. On June 19, 1984, a criminal complaint was issued against petitioner Gilmore and he was charged and arrested for criminal homicide, 18 Pa.Cons.Stat.Ann. § 2501; aggravated assault, 18 Pa.Cons. Stat.Ann. § 2702; and recklessly endangering another person, 18 Pa.Cons.Stat.Ann. § 2705. On October 21, 1984, an information was filed. Gilmore waived arraignment and on October 23, 1981 a plea of "not guilty" was entered on his behalf.

On January 10, 1983 petitioner Gilmore appeared before President Judge Forrest Schaeffer of the Court of Common Pleas of Berks County, and entered a plea of guilty to involuntary manslaughter. Judge

Schaeffer engaged in a fairly detailed colloquy with petitioner Gilmore and his counsel on that date to ensure that petitioner understood the nature of the charge of involuntary manslaughter and the rights which he was waiving by entering a guilty plea. Judge Schaeffer also heard from Mr. Haddad on behalf of the Commonwealth who outlined for the court the factual basis for the charges brought against the petitioner. Throughout the colloquy, petitioner, through his counsel, reiterated that he was not admitting his guilt and that he had no recollection of injecting his wife with the fatal dose of meperidine.

As of January 10, 1983, no plea agreement had been entered into between the Commonwealth and Gilmore. At best there was a report by counsel to Judge Schaeffer that plea discussions were underway. Mr. Haddad told the court that the Commonwealth would make a recommendation as to an appropriate sentence after obtaining a psychological and medical examination of petitioner. Judge Schaeffer then stated that he would accept petitioner's plea and order a presentence report.

The colloquy before Judge Schaeffer resumed on February 28, 1983. At that time, Mr. Haddad set forth the terms of the plea bargain, and stated that the Commonwealth would accept a plea to involuntary manslaughter and the Commonwealth would recommend a sentence of probation plus the maximum fine of $10,000. Judge Schaeffer, upon hearing the Commonwealth's position, stated that he would not accept the plea bargain. He then gave petitioner the choice between permitting the plea to be an open plea thereby permitting the Judge to sentence him in accordance with the law as he deemed proper or withdrawing his guilty plea. Petitioner, after consulting with his attorney, decided to stand on the plea as previously entered. Judge Schaeffer then proceeded to ask petitioner Gilmore several questions based on inconsistent statements Gilmore had allegedly made to two police officers and which were the basis of the Commonwealth's evidence against Gilmore. Petitioner's counsel objected to the line of questioning

whereupon Judge Schaeffer ordered the guilty plea withdrawn and ordered petitioner to stand trial. In his written opinion, Judge Schaeffer held that there had been an insufficient factual basis for him to accept the plea and it was for this reason that he had ordered the plea withdrawn.

Petitioner Gilmore contends that Judge Schaeffer's actions in withdrawing his guilty plea and ordering him to stand trial violate the constitutional prohibition against double jeopardy. Gilmore claims that Judge Schaeffer accepted his guilty plea and that jeopardy attached to the guilty plea so that he may not now be tried for the crimes with which he was originally charged. In his Report and Recommendation, Judge Leomporra concluded that jeopardy had not attached; he based his conclusion on two alternative grounds. First, he concluded that jeopardy had not attached because petitioner had not yet been put to trial: no jury had been empanelled nor had the court started to hear evidence. In the alternative, Judge Leomporra, relying upon *Klobuchir v. Commonwealth of Pennsylvania*, 639 F.2d 966 (3d Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 474 (1981), held that Gilmore had never been in jeopardy of being convicted of murder because he entered a guilty plea to involuntary manslaughter; therefore there was no double jeopardy violation. Petitioner has filed objections to both grounds of the Report and Recommendation.

▉ Petitioner filed his petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. Generally, federal *habeas corpus* is a remedy which is available only post-conviction. Exceptions have been made, however, where "special circumstances" exist, and as Judge Leomporra concluded "special circumstances" exist in this case because forcing petitioner to stand trial would defeat the constitutional right he seeks to preserve. *U.S. ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034 (3d Cir.1975). Neither party has raised any objection to the conclusion that a federal court properly may entertain peti-

tioner's double jeopardy claims in a federal *habeas* petition at this time, and I will, therefore, approve and adopt this aspect of the Report and Recommendation.

■ Petitioner's first objection pertains to the inference created in the Report and Recommendation that jeopardy never attaches to a plea. The Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb ..." At some point, the constitutional protection against double jeopardy must attach to a guilty plea; otherwise, a defendant could be subject to punishment for the same offense twice. Following a guilty plea, punishment is usually as imminent and inevitable as after a conviction by a jury. In *United States v. Jerry*, 487 F.2d 600, 606 (3d Cir.1973), the court held that the defendant "must be considered to have been convicted by the entry of his plea of guilty just as if a jury had found a verdict of guilty against him and jeopardy attached with the acceptance of his guilty plea by the district court." Therefore, to the extent that the Report and Recommendation implies that jeopardy may never attach to a guilty plea, it must be rejected.

■ The Magistrate held in the alternative that jeopardy never attached because Gilmore was never faced with the possibility of being convicted for murder. In support of this conclusion, the Magistrate relied upon *Klobuchir v. Commonwealth of Pennsylvania*, 639 F.2d 966 (3d Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 474 (1981), in which the court held that the double jeopardy clause did not bar the state from retrying the defendant on the original first degree murder charge after his plea was withdrawn. The *Klobuchir* court concluded that when the trial judge accepted the defendant's guilty plea

to third degree murder, he could not have considered any greater charge, and therefore the defendant was never in jeopardy of being convicted of first degree murder. An important distinction between *Klobuchir* and the present case is that in *Klobuchir*, the defendant had moved post-conviction for relief from his guilty plea while in this case Judge Schaeffer vacated or ordered the withdrawal of petitioner's guilty plea over his objections. In *Klobuchir*, there was no question that the defendant could be retried for the lesser offense to which the defendant had entered a plea, *i.e.* third degree murder; jeopardy had not attached to the lesser offense. Rather, the question was whether he could also be tried for the higher offense, and the court held that he could be. In this case, the question petitioner is raising is essentially whether he could even be tried for the lesser offense for which he entered a guilty plea, *i.e.* whether jeopardy attached to the plea of guilty of involuntary manslaughter.[1]

Petitioner contends that Judge Schaeffer unconditionally accepted his plea on January 10, 1983, that jeopardy attached to that plea, and that Judge Schaeffer's order striking the plea and setting the case for trial violated his fifth amendment protection from further prosecution. Petitioner further contends that a judge is permitted to vacate a guilty plea only in extreme circumstances, and those circumstances did not exist in this case. In this way, petitioner analogizes the vacation of a guilty plea over the objection of the defendant to the declaration of a mistrial when the defendant objects.

■ As previously noted, the court in *United States v. Jerry*, 487 F.2d 600 (3d Cir.1973) held that jeopardy attaches to a guilty plea which is accepted.[2] The ques-

---

1. If I were to conclude that jeopardy had attached because the plea had been irrevocably accepted and could not be properly vacated, the appropriate remedy would be to reinstitute the guilty plea. *See United States v. Hecht*, 638 F.2d 651 (3d Cir.1981).

2. Without elaborating or citing any legal authority, the *Jerry* court concluded that jeopardy at-

taches with the acceptance of the guilty plea by the district court. 487 F.2d at 606. As the court in *United States v. Cruz*, 709 F.2d 111, 113 (1st Cir.1983) noted, no court has analyzed in depth the application of double jeopardy to a guilty plea, and it has not been clear why the *Jerry* court chose the acceptance of a guilty plea as the point at which jeopardy attaches rather than

tions left open after *Jerry* and which are raised by the present case are what constitutes acceptance for purposes of double jeopardy and does jeopardy attach automatically or irrevocably when a plea is accepted.

In *U.S. ex rel. Metz v. Maroney,* 404 F.2d 233 (3d Cir.1968), the court held that the

the entry of judgment. I note too that there is confusion in the case law as to what constitutes acceptance.

The earliest case to address the issue of attachment of jeopardy to a guilty plea which I have found is *Raidon v. United States,* 274 F.2d 304 (6th Cir.1960). Drawing an analogy to *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), in which the court emphasized that it is not essential that a verdict of guilty or innocent be returned for a defendant to have been placed in jeopardy, the *Raidon* court concluded that a plea of guilty puts the accused in jeopardy. The *Raidon* court, however, did not address the issue of when jeopardy attaches.

Following the lead of the *Raidon* court, the court in *United States v. Barbosa,* 224 F.Supp. 628 (D.P.R.1963) held that jeopardy attached to defendant's guilty plea. Defendant Barbosa had pled guilty to taking by force and violence on a federal reservation a purse containing $60. Barbosa's plea was accepted by the court but sentencing was postponed pending the receipt of a presentence report. Before sentencing, the indictment was dismissed because a second, identical indictment had been returned by the grand jury. The court concluded that because the plea established defendant's guilt and there remained only the formality of entering judgment of conviction and the imposition of sentence, jeopardy had attached. *Id.* at 630. The *Barbosa* court therefore suggested that jeopardy attaches at the time of the acceptance of the plea, but there was no discussion as to what constitutes acceptance.

Courts since *United States v. Jerry* have followed the *Jerry* court's lead and have held that jeopardy attaches with the acceptance of the guilty plea, but little thought has been given to why this should be the rule or to what constitutes acceptance for purposes of double jeopardy. More consideration perhaps should be given to whether jeopardy does not attach to a guilty plea until judgment on that plea is entered.

Federal Rule of Criminal Procedure 11(f) states:

Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

This implies that acceptance of the guilty plea does not always foreclose a judge from taking further action and even subsequently rejecting the plea if there is a question about the factual basis for the plea even if he or she has already "accepted" it. While the provision does not

address the issue of double jeopardy, it follows from it that jeopardy does not attach irrevocably at the time of acceptance or that acceptance is not valid until there has been a factual determination.

The issues raised here are complex and my purpose is to provoke thought on an issue which heretofore has not been fully analyzed and which presents practical problems for trial judges who routinely "accept" pleas and who may not fully consider the potential double jeopardy consequences of their actions and the requirements of Fed.R.Crim.P. 11.

For instance, in *United States v. Cruz,* 709 F.2d 111 (1st Cir.1983), the court held that a district court cannot unqualifiedly accept a bargained guilty plea and subsequently reject it on the basis of information contained in the presentence report. Jeopardy attaches to the acceptance. In *United States v. Sanchez,* 609 F.2d 761 (5th Cir.1980), however, the court held that jeopardy did not attach to a guilty plea which the trial judge "temporarily" accepted while she studied the probation report. The court noted that no final judgment had been entered on the lesser included offense, the defendant had not been subjected to the harassment of successive prosecutions; and there was no question of multiple trial or multiple punishments. The same could be said in most cases where the defendant has entered a plea of guilty and judgment has not yet been entered. Not until judgment is entered does the defendant face the imminent prospect of punishment. Furthermore, a Rule 11 colloquy is far less an ordeal than a trial.

In *United States v. Combs,* 634 F.2d 1295 (10th Cir.1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 304 (1981), the court held that jeopardy did not attach until judgment had been entered. "Until entry of judgment and sentencing on the accepted guilty plea, defendant had not been formally convicted." *Id.* at 1298. In a strongly worded dissent, Judge McKay stated that jeopardy must attach at the time of acceptance because the accepted plea, like a jury's verdict, establishes guilt and leaves the court nothing to do but impose sentence and enter judgment. *Id.* at 1300–01.

While I am aware that I am bound by the precedent of *Jerry* and the rule that jeopardy attaches at the time of acceptance, I am convinced that *Jerry* raised as many questions as it answered. For purposes of this case, I have concluded that even if jeopardy attaches at the time of acceptance of a plea, it does not attach irrevocably and may be released if there is manifest necessity.

state trial court properly acted in setting aside the guilty plea without the consent of the defendant at the time of sentencing because the defendant made statements then which, if true, constituted a complete defense to the charge of murder. Analogizing the situation to that in which a trial judge believes that an involuntary mistrial should be declared because of manifest necessity, the court held that, under the circumstances, requiring the defendant to stand trial on a plea of not guilty did not violate the constitutional prohibition against double jeopardy. The court concluded that fundamental fairness and the interests of justice warranted the state judge's actions. *Id.* at 236–37. In *U.S. v. Hecht,* 638 F.2d 651 (3d Cir.1981), the court held that the trial court erred in vacating the plea because there was a sufficient factual basis for the guilty plea. The court, therefore, ordered the plea reinstated.

■ The *Metz* and *Hecht* cases suggest that a trial judge's discretion in accepting or rejecting a plea agreement is limited, and that his actions may have double jeopardy ramifications. They further suggest that acceptance of a guilty plea is not irrevocable. Under certain circumstances, a trial judge will be justified in vacating a plea if he becomes aware that there is an insufficient factual basis for the plea.

In *United States v. Cruz,* 709 F.2d 111, 114 (1st Cir.1983), the court held that jeopardy does not attach automatically and irrevocably in all instance when a guilty plea is accepted. Like the *Metz* court, the *Cruz* court analogized the judicial withdrawal of a previously accepted guilty plea to the judicial declaration of a mistrial and suggested that the reasonable approach to these situations would be to hold that jeopardy attaches upon acceptance of the guilty plea, but that the district court may rescind its acceptance at any time before sentencing and judgment upon the showing of "manifest necessity." The *Cruz* court went on to hold, however, that it was unnecessary to reach this standard because the district court had violated Federal Rules of Criminal Procedure 11(e) and 32(c) by vacating the plea solely on the basis of information in the presentence report.

The Pennsylvania courts in their various rulings have implicitly held that Judge Schaeffer did not violate state procedural rules in ordering the withdrawal of Gilmore's guilty plea. Therefore, the question becomes that which the *Cruz* court did not reach, *i.e.* whether jeopardy attached irrevocably on January 10, 1983 when Judge Schaeffer stated that he would accept Gilmore's plea or whether he acted properly in rescinding the plea prior to sentencing because there was manifest necessity for such action.

■ Because I believe that Judge Schaeffer's actions were justified, Gilmore's petition for writ of *habeas corpus* must be denied. First, it would appear that Judge Schaeffer's comments at the January 10, 1983 plea hearing did not constitute an unequivocal acceptance of the plea. The plea bargain between Gilmore and the Commonwealth was only in the discussion stage as of January 10, 1983, and it was not until the February 28th hearing that the Commonwealth outlined the bargain for the court. More importantly, however, even if Judge Schaeffer did accept the plea on January 10, 1983, the lack of factual basis for the plea warranted his order withdrawing the plea before sentencing on February 28, 1983.

Addressing the issue of what constitutes a voluntary and intelligently made plea, the Supreme Court in *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), held that a defendant's guilty plea was not rendered constitutionally invalid because the defendant protested his innocence as long as there was a strong factual basis for the plea presented by the state. "When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, . . ., its validity cannot be seriously questioned." *Id.* at 37–38, 91 S.Ct. at 167. In cases since *Al-*

*ford,* courts have held that a judge may commit constitutional error if he accepts a guilty plea when defendant's admission of guilt is equivocal, and a sufficient factual basis is lacking. *See U.S. v. Hecht,* 638 F.2d 651, 653 (3d Cir.1981); *Willett v. State of Georgia,* 608 F.2d 538, 540 (5th Cir. 1979); *United States ex rel. Dunn v. Cascles,* 494 F.2d 397, 399–400 (2d Cir.1974).

Throughout the plea colloquy on January 10, 1983, Gilmore's attorney, Emmanuel Dimitriou, repeatedly emphasized that Gilmore was not admitting his guilt and that, in fact, he had no recollection of any of the acts related to the alleged incident as a result of his consumption of alcohol and his physical exhaustion at the time. Petitioner's Exhibit A, at 7–8, 10. Therefore, the only factual basis for the plea were the facts Mr. Haddad, for the Commonwealth, stated would have been presented at trial. These were limited to facts about the cause of death, *i.e.,* blood alcohol level and blood meperidine level of decedent and two conflicting statements petitioner had allegedly made as to his involvement in the events which led to his wife's death. One was a statement to Trooper Pease that he had injected his wife with a vitamin and meperidine combination; the second was a statement to Chief Harley Smith in which Gilmore denied having made any injections. Petitioner's Exhibit A, at 5–7.

On February 28, 1983, after rejecting the plea bargain and the recommendation of probation and a $10,000 fine, Judge Schaeffer attempted to engage in a colloquy with petitioner about the alleged admissions to Trooper Pease which were the basis of the Commonwealth's case against him. At this point, counsel for petitioner objected to any questioning by the judge stating that he had advised his client that his open plea was based on the record as it had already been established and that additional colloquy was unnecessary. *Id.* at 7. Judge Schaeffer then promptly ordered the plea withdrawn.

While it may have been preferable for Judge Schaeffer to elaborate on the reasons for his actions on the record at the time, I do not think his failure to do so affects the validity of his actions, and I accept and agree with his conclusion that there was an inadequate factual basis to support petitioner's guilty plea. The primary evidence pointing to petitioner's guilt were the admissions he allegedly made to Trooper Pease to the effect that he had injected his wife with meperidine. Yet, at the plea hearings, petitioner was adamant that he was not admitting his guilt. He also refused, through his counsel, in response to Judge Schaeffer's questions, to acknowledge making any statements to Trooper Pease. Without verification of these statements at a minimum which could come only from the lips of petitioner, there was an insufficient basis for the plea. Statements which petitioner never admitted having made and the circumstances of which are unclear, are simply insufficient to support the guilty plea under *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and its progeny. It is unclear from the record presented to me when petitioner allegedly made his conflicting statements; it is also unclear what petitioner's mental and physical condition was at the time he allegedly made the statements. Finally, petitioner's statement in which he allegedly admitted to injecting his wife with meperidine does not include a statement as to what time frame his admission covered, *i.e.* immediately prior to her death or several days before.

Therefore, jeopardy had not attached irrevocably to the plea to involuntary manslaughter entered by petitioner. And Judge Schaeffer, in ordering petitioner's guilty plea to be withdrawn and petitioner to stand trial, did not expose petitioner to a violation of the constitutional prohibition against double jeopardy for the involuntary manslaughter charge. Furthermore, under *Klobuchir v. Commonwealth of Pennsylvania,* 639 F.2d 966 (3d Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 474 (1981), jeopardy has not attached to the higher offense with which petitioner was charged.