The STATE of Ohio, Appellant,

v.

MUSICK, Appellee.

[Cite as *State v. Musick* (1997), 119 Ohio App.3d 361.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 96–P–0207.

Decided April 25, 1997.

*Victor V. Vigluicci,* Portage County Prosecuting Attorney, and *Mark J. Hanna,* Assistant Prosecuting Attorney, for appellant.

*James J. Crisan,* for appellee.

---

NADER, Judge.

This is an accelerated appeal by appellant, the state of Ohio, from a judgment entry of the Portage County Municipal Court, Ravenna Division, granting the motion of appellee, Richard P. Musick, to dismiss the criminal complaint filed against him.

On March 18, 1996, appellee was cited for failing to comply with the provisions of his deer-hunting permit in violation of R.C. 1531.02 and Ohio Adm. Code 1531:31–9–01(T). Apparently, appellee participated in a controlled deer hunt on the premises of the Ravenna Munitions Plant on two separate occasions, November 3, 1995, and November 17, 1995, when he was permitted to hunt only once. On March 19, 1996, appellee appeared in the offices of the Portage County Clerk of Courts and paid a $37 fine and $38 in court costs. Appellee did not sign the plea of guilty appearing on the reverse side of the citation. The parties stipulated that it was common practice in the clerk's office to accept payment of the fine without a signature on the guilty plea.

However, the deputy clerk made a mistake in imposing the fines. The summary procedure whereby the clerk of courts is authorized to accept guilty pleas and impose sentence in the form of fines is limited by Crim.R. 4.1 to cases where the defendant is charged only with a minor misdemeanor. Crim.R. 4.1(B) defines a minor misdemeanor as an offense for which the potential penalty does not exceed $100. See, also, R.C. 2929.21(D). Each court is required under Crim.R. 4.1(E) to establish a schedule of fines applicable to minor misdemeanors. The deputy clerk in this case apparently determined that a violation of R.C. 1531.02 was a minor misdemeanor, imposed a $37 fine in accordance with the schedule created by the Ravenna Municipal Court and assessed $38 in court costs, charging appellee $75; however, a violation of R.C. 1531.02 is not a minor misdemeanor. It is a fourth-degree misdemeanor, per R.C. 1531.99, punishable by a maximum of thirty days in jail, a fine of $250, loss of hunting privileges up to three years, or any combination of the three. R.C. 2929.21 and 1533.68.

The same day appellee appeared before the clerk and paid the fine, March 19, 1996, the clerk of courts issued a second summons, commanding appellee to appear in court on March 29, 1996. On the appearance docket, the clerk entered a notation that the "money paid on waiver" would be "credited as a bond"; however, there was no judgment entry to this effect. Appellee pleaded not

guilty. On March 29, 1996, appellee filed a motion to dismiss the complaint on the ground that his prosecution was barred by the Double Jeopardy Clauses of the United States and Ohio Constitutions.

Judge John A. Enlow held a hearing on appellee's motion on April 17, 1996. Appellee testified that Officer Richard Cooley of the Ohio Department of Natural Resources met with him in appellee's office in Warren, on March 18, 1996. Cooley filled out a citation and told appellee that he had to appear in court. After Cooley left, appellee noticed that Cooley did not check the box on the reverse side of the citation form indicating that he was required to appear in court, which confused him. He called someone in the clerk of courts' office and asked how he could "take care" of the citation. The person on the phone said that he could appear at the clerk of courts' office and pay $75. On the 19th, appellee went to the public service window at the clerk's office. He showed a clerk his ticket and said he was there to pay a fine. The clerk consulted her computer and asked him to pay $75, which he did. The clerk noted on the reverse side of the citation that appellee had paid a total of $75 in a section labeled "Guilty Plea, Waiver of Trial, Payment of Fines and Costs," but did not ask him to sign the guilty plea form. Instead, she gave him a receipt and told him that he did not have to appear in court.

On June 5, 1996, Judge Enlow granted appellee's motion to dismiss. On June 6, 1996, the clerk entered a notation on the appearance docket that the $75 "fine for waiver" would be construed as a forfeited bond; again, there was no accompanying judgment entry to this effect. The state has made no attempt to refund the $75.

On June 12, 1996, the state filed a notice of appeal as of right pursuant to R.C. 2945.67, but did not file a certification pursuant to Crim.R. 12(J). In its assignments of error, the state alleges:

"1. The trial court erred as a matter of law in granting the appellee's motion to dismiss for double jeopardy.

"2. The trial court's granting of the appellee's motion to dismiss on the basis of double jeopardy was an abuse of discretion."

## A. Jurisdiction

Although not raised by appellee, we raise *sua sponte* the issue of our jurisdiction over this appeal in light of the prosecutor's failure to file a Crim.R. 12(J) certification along with the notice of appeal. Crim.R. 12(J) provides the procedural requirements for appeals taken by the state in a criminal case. It reads:

"When the state takes an appeal as provided by law, the prosecuting attorney shall certify that: (1) the appeal is not taken for the purpose of delay; and (2) the ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.

"*The appeal shall not be allowed unless the notice of appeal and the certification by the prosecuting attorney are filed with the clerk of the trial court within seven days after the date of the entry of the judgment or order granting the motion.*" (Emphasis added.)

■ This certification is jurisdictional; we cannot entertain an appeal if the state fails to comply. As the rule is currently written, it may be contended that the rule appears to apply the certification requirement to all appeals by the state as provided by law. In contrast, the former version of Crim.R. 12(J) required this certification only in two, very narrow contexts: where the state appealed the judgment of the trial court to return property that was allegedly embezzled, and where the state appealed an interlocutory order granting a motion to suppress evidence. If we were to mechanically enforce the rule as written, then we would have no choice but to dismiss the present appeal for lack of jurisdiction. However, strict compliance with the plain text of Crim.R. 12(J) would lead to absurd results.

■ Clearly, the rule was not designed to apply in a case such as the one at bar; it expressly requires a statement that (1) the appeal is not taken to delay the case, *and* (2) the prosecution's case has been so harmed by the judge's ruling, presumably upon an evidentiary issue, that it could not sustain its burden of proof "with respect to the pending charge." These requirements clearly contemplate an interlocutory order, such as the disposition of a motion to suppress evidence, wherein the trial court has made a ruling on less than the entire cause which so cripples the prosecution's case that it cannot proceed.

In contrast, a motion to dismiss all charges on double jeopardy grounds, when granted, disposes of the entire case. As a result, there are no further proceedings which the state can delay, and there are no pending charges with respect to which the state must sustain its burden of proof. These certifications are an unnecessary surplusage in the context of an appeal of this type of motion to dismiss. Accordingly, we conclude that Crim.R. 12(J) is inapplicable to the case at bar, see Crim.R. 1(C) ("These rules, * * * to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure [1] upon appeal * * *"), and hold that the Portage County Prosecutor's failure to file the certification does not deprive this court of jurisdiction to consider this appeal.

### B. Standard of Review

The next issue raised by the briefs of the parties concerns the appropriate standard of review applicable to the trial court's decision to dismiss pending charges on double jeopardy grounds.

Appellee relies on *State v. Mrus* (1991), 71 Ohio App.3d 828, 595 N.E.2d 460, a reported decision from this court in which the panel, including two visiting judges, concluded: "Upon review of a motion to dismiss, this court's standard of review is whether the trial court abused its discretion." *Id.* at 829, 595 N.E.2d at 461 (discussing a motion to dismiss filed on *ex post facto* grounds).

Upon further reflection, we have reconsidered that pronouncement and declare it to be in error. Both the interpretation of a statute and a determination by a trial court that the Double Jeopardy Clause prohibits prosecution, in a given case, are matters of law. In general, an appellate court will defer to a trial court's factual findings, but must independently determine, as a matter of law, whether the trial court erred in applying the substantive law to the facts of the case. *State v. Williams* (1994), 94 Ohio App.3d 538, 543, 641 N.E.2d 239, 242–243; *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808, 811 ("A trial court's purely legal determination will not be given the deference that is properly accorded to the trial court with regard to those determinations that are within its discretion."). In this context, we must defer to Judge Enlow's findings of fact recited in his judgment entry, but we must independently determine if he correctly applied the substantive constitutional law of double jeopardy to the facts of this case. This is a *de novo* standard of review.

Similarly, ten out of thirteen federal circuit courts of appeal hold that the trial court's determination that double jeopardy principles are implicated in a given case is a question of law which the appellate courts will review *de novo*.[1] Three circuits, the Fourth, Federal, and D.C. Circuits, like Ohio courts, have not considered the issue.

The federal position on this matter represents the more logical view. Accordingly, we hereby overrule the statement in *Mrus* that all motions to dismiss are

---

1. *United States v. Aguilar–Aranceta* (C.A.1, 1992), 957 F.2d 18, 21; *United States v. Morgan* (C.A.2, 1995), 51 F.3d 1105, 1110; *United States v. Baird* (C.A.3, 1995), 63 F.3d 1213, 1215; *United States v. Deshaw* (C.A.5, 1992), 974 F.2d 667, 669; *United States v. Ursery* (C.A.6, 1995), 59 F.3d 568, 570, reversed on other grounds (1996), 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549; *United States v. Furlett* (C.A.7, 1992), 974 F.2d 839, 842; *United States v. Ivory* (C.A.8, 1994), 29 F.3d 1307, 1310; *United States v. Gutierrez–Zamarano* (C.A.9, 1994), 23 F.3d 235, 237; *United States v. Rogers* (C.A.10, 1992), 960 F.2d 1501, 1506; *United States v. Moore* (C.A.11, 1995), 43 F.3d 568, 571.

to be reviewed for abuse of discretion and review Judge Enlow's decision that double jeopardy principles were violated in these cases under a *de novo* standard.

## C. Double Jeopardy

Turning now to the merits of appellee's double jeopardy claim, the municipal court determined that jeopardy attached to the summary proceeding wherein the deputy clerk accepted payment of the fine as a waiver of appellee's right to a trial. The Double Jeopardy Clauses of the Ohio and United States Constitutions protect the accused from (1) multiple prosecutions for the same offense and (2) multiple punishments for the same offense. *Shearman v. Van Camp* (1992), 64 Ohio St.3d 468, 469, 597 N.E.2d 90, 91–92; *Witte v. United States* (1995), 515 U.S. 389, 395–397, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351, 361–362. "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Schiro v. Farley* (1994), 510 U.S. 222, 229, 114 S.Ct. 783, 789, 127 L.Ed.2d 47, 56. As the motion to dismiss and the trial court's judgment entry broached the subject generally, we will independently consider whether the proposed prosecution in this case is prohibited by either component of the Double Jeopardy Clause.

### 1. Multiple Prosecutions

Insofar as the Double Jeopardy Clause precludes multiple prosecutions, "the proscription is against a *second criminal trial* after jeopardy has attached in a *first criminal trial*." (Emphasis *sic.*) *State v. Gustafson* (1996), 76 Ohio St.3d 425, 435, 668 N.E.2d 435, 443. Therefore, "the prohibition against *multiple trials* is the 'controlling constitutional principle.'" *United States v. DiFrancesco* (1980), 449 U.S. 117, 132, 101 S.Ct. 426, 435, 66 L.Ed.2d 328, 343, quoting *United States v. Wilson* (1975), 420 U.S. 332, 346, 95 S.Ct. 1013, 1023, 43 L.Ed.2d 232, 243. Thus, the primary inquiry is whether the defendant was subjected to a first *trial* to which jeopardy attached so as to bar a second trial for the same offense. In this vein, several facets of the constitutional prohibition on multiple prosecutions have evolved: risk of conviction, finality of judgments, and stress upon the accused. If jeopardy is said to attach under any of these segments, a subsequent prosecution would be barred. As all of these concepts possess possible relevance to the outcome of this case, we will consider each of them in turn.

### a. Risk of Conviction

The Supreme Court of the United States aptly explained this facet of the Double Jeopardy Clause in *Abney v. United States* (1977), 431 U.S. 651, 661, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651, 661:

" 'The prohibition is not [only] against being twice punished, but against being twice *put* in jeopardy * * *.' * * * The 'twice put in jeopardy' language of the Constitution thus relates to a potential, *i.e.*, the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried." (Emphasis *sic.*) *Id.*, quoting *Price v. Georgia* (1970), 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300, 303.

Therefore, jeopardy contemplates risk. *Breed v. Jones* (1975), 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346, 354–355.

Moreover, "[b]oth the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins *before a trier 'having jurisdiction* to try the question of the guilt or innocence of the accused.' * * * Without *risk* of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." (Emphasis added.) *Serfass v. United States* (1975), 420 U.S. 377, 391–392, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265, 276, quoting *Kepner v. United States* (1904), 195 U.S. 100, 133, 24 S.Ct. 797, 806, 49 L.Ed. 114, 126. See, also, *State v. Brock* (1996), 110 Ohio App.3d 656, 666, 675 N.E.2d 18, 24 (stating, "The judgment having been determined to be void *ab initio* for want of jurisdiction * * *, we do not find that appellant was in jeopardy on the offense and the cause must be remanded to the trial court to proceed as if no plea has been entered * * *," when defendant entered a guilty plea to aggravated murder before only one judge instead of the required three).

Likewise, in this case, the clerk had no authority or jurisdiction to accept payment of the fine as a waiver because appellee's violation of R.C. 1531.02 was a fourth-degree misdemeanor which required a court appearance. In the initial "proceeding," the clerk could not validly convict appellee under the statute or criminal rules. Therefore, because appellee was not exposed to the *risk* of any conviction, he was not at risk of a second conviction for the same offense, and jeopardy, in this sense, did not attach.

### b. Finality of Judgment

Another consideration implicit in the guarantee against multiple punishments is "akin to that [purpose] served by the doctrine of *res judicata* and collateral estoppel—to preserve the finality of judgments." *Crist v. Bretz* (1978), 437 U.S. 28, 33, 98 S.Ct. 2156, 2159, 57 L.Ed.2d 24, 30. The Double Jeopardy Clause has been historically understood as embracing three common-law pleas—*autrefois acquit, autrefois convict,* and pardon—that barred the retrial for the same offense for which the defendant had already been acquitted, convicted or pardoned. *United States v. Scott* (1978), 437 U.S. 82, 87, 98 S.Ct. 2187, 2191–2192, 57 L.Ed.2d 65, 71–72. Judgments of acquittal or conviction are said to bar a second

prosecution precisely because of the "public['s strong] interest in the finality of criminal judgments." *Arizona v. Washington* (1978), 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717, 726 (acquittal); *United States v. Wilson* (1975), 420 U.S. 332, 343, 95 S.Ct. 1013, 1021–1022, 43 L.Ed.2d 232, 241 (conviction). Similarly, pleas are treated as equivalent to a conviction upon a jury verdict and are protected by courts with as much zeal as a conviction upon the merits after a full trial.[2]

Regarding sentencing, a court violates a defendant's right to be free from double jeopardy when it attempts to enhance the defendant's sentence after he acquires a legitimate or reasonable expectation of finality in the severity of his sentence. *Stone v. Godbehere* (C.A.9, 1990), 894 F.2d 1131, 1135; *United States v. Kane* (C.A.9, 1989), 876 F.2d 734, 736.

" 'There can be no expectation of finality in sentences that are illegal and that were under challenge by the government from the [inception, however].' " *United States v. Jordan* (C.A.9, 1990), 895 F.2d 512, 516, quoting *United States v. Arrellano–Rios* (C.A.9, 1986), 799 F.2d 520, 524.

In this case, no plea was entered because appellee failed to sign the plea form. Even though this was commonplace in the clerk's office, the Sixth Appellate District has held, in the context of a traffic offense, that jeopardy does not attach in a proceeding in which the defendant fails to sign the guilty plea but merely pays the fine. *State v. Gomez* (1988), 54 Ohio App.3d 200, 562 N.E.2d 164.

The Sixth Appellate District looked to the Traffic Rules in reaching this determination. Traf.R. 13(D) provides that a defendant charged with a traffic offense may "[a]ppear in person at the traffic violations bureau, sign a plea of guilty and waiver a trial provision of the ticket, and pay the total amount of the fine and costs."

The rule provides, as a condition precedent to paying the fine, that the defendant must sign the plea of guilty. In contrast is the last paragraph of Traf.R. 13(D), which removes the requirement of signing the plea of guilty when remittance of the fine is made by mail. Since the defendant in *Gomez* personally appeared at the traffic violations bureau, he was required to sign the guilty plea. His failure to do so prevented attachment of jeopardy. *Gomez,* 54 Ohio App.3d at 201–202, 562 N.E.2d at 165–166.

In this case, the criminal rules apply. Crim.R. 4.1(C) provides that "in lieu of appearing at the time and place stated, [the defendant] may * * * sign the guilty

---

**2.** There is, however, an inconsistency of views among the reported decisions as to when jeopardy attaches during the plea process. See *Gilmore v. Zimmerman* (D.C.Pa.1985), 619 F.Supp. 859, 862, fn. 2 (canvassing the history of the rule that jeopardy attaches to proceedings wherein the defendant pleads guilty and collecting cases setting forth various theories).

plea and waiver of trial provision of the citation, and mail the citation and a check or money order for the total amount of the fine and costs to the violations bureau."

The Criminal Rules do not provide the same leniency for mail-in remittances as do the Traffic Rules. As with the Traffic Rules, signing the guilty plea is a condition precedent to payment of the fine. Consistent with the holding in *Gomez, supra,* appellee's failure to sign the guilty plea prevented entry of a valid plea and, therefore, prevented attachment of jeopardy.

### c. Stress upon Accused

The prohibition against double jeopardy contained in the Fifth Amendment has also been interpreted to protect an individual even from the mere hazards of trial more than once for an alleged offense upon the notion that the state should not be permitted to subject the accused to continuing expense and anxiety. *Green v. United States* (1957), 355 U.S. 184, 187–188, 78 S.Ct. 221, 223–224, 2 L.Ed.2d 199, 204–205.

"Because of this focus on the 'risk' of conviction, the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense. It thus protects interests wholly unrelated to the propriety of any subsequent conviction." *Abney,* 431 U.S. at 661, 97 S.Ct. at 2041, 52 L.Ed.2d at 661.

In *Gustafson,* 76 Ohio St.3d at 435–437, 668 N.E.2d at 443–445, the court considered the question whether jeopardy attached to an administrative driver's license suspension in the context of a multiple prosecution analysis. Chief Justice Moyer found that no jeopardy attached to the summary administrative proceeding wherein the arresting officer acted as an agent of the BMV and suspended appellee's license because "[t]he administrative suspension of one's driver's license is simply not the type of proceeding to which double jeopardy protection attaches so as to preclude a subsequent criminal prosecution." *Id.* at 436, 668 N.E.2d at 444. By analogy, we likewise consider that the summary proceeding where a person accused of a minor misdemeanor merely appears at a service window to pay a fine is simply not the type of proceeding to which the Double Jeopardy Clause was intended to apply. Consequently, we cannot agree with the municipal court that jeopardy, in the sense that it denotes the traditional anxiety associated with a criminal trial, attached to the summary plea proceeding.

In sum, jeopardy did not attach to the summary proceeding before the deputy clerk for three reasons: (1) the deputy clerk was not authorized by law to accept a plea and impose a sentence; (2) appellee did not enter a valid plea; and (3) appellee was not subject to the kinds of emotional, societal, and financial stresses that accompany traditional prosecutions. The multiple-prosecution component of

the Double Jeopardy Clause does not prevent a subsequent prosecution in this case.

## 2. Multiple Punishment

Under the multiple-punishment component of the Double Jeopardy Clause, the focus is not upon whether the accused has been twice exposed to the prosecutorial machinery of the state. Rather, the inquiry focuses upon whether the accused has been (1) punished twice for (2) the same offense by (3) separate proceedings. See *State v. Hlavin* (Jan. 19, 1996), Geauga App. No. 95–G–1912, unreported, at 6, 1996 WL 200584, citing *Dept. of Revenue of Montana v. Kurth Ranch* (1994), 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767, implicitly overruled on other grounds in *Gustafson, supra.* Therefore, a threshold requirement under this approach is a showing by the accused that he has been subject to one "punishment" so that another is forbidden by the Constitution.[3]

This case presents a question of first impression in Ohio, namely, whether unauthorized punishment can constitute "punishment" for double jeopardy purposes.

A simplistic approach to the facts of this case, which, incidentally, the state urges we take, would be to argue that, because the proceeding before the deputy clerk of courts was not authorized, there was no *first* punishment cognizable under the law and, therefore, any sanctions to be imposed after a subsequent prosecution could not constitute a *second* punishment.

In response, appellee argues that the state essentially imposed the fine even though the clerk was not authorized to do so. Appellee cites no authority for his assertion and argument, but relies upon a commonsense approach: even though the school principal was not permitted to whip the naughty school child, the child still felt the lash. From appellee's perspective, it does not matter that the deputy clerk of courts was not properly authorized to impose fines upon him. Because the clerk kept the money, in practical terms, defendant still "felt the lash" whether the deputy clerk made a mistake or not. For this reason, the state's argument that the fine was unauthorized rings hollow—if it were improperly collected, the clerk should have tendered a refund. According to appellee, although not authorized by law, the fact that the fine was imposed and not returned is more significant to the double jeopardy analysis.[4]

---

3. *E.g., Morgan,* 51 F.3d at 1115 (prior judgment in a civil proceedings for $1.8 million was "remedial;" thus, appellant failed to demonstrate that he was already "punished" once, so that the Double Jeopardy Clause did not prevent subsequent prosecution for bank fraud for the same conduct).

4. The idea would be even more clear if appellee had served jail time as his punishment instead of merely paying a fine, which, if unauthorized, could have been returned. If a person

Upon further reflection, however, we cannot accept the rest of appellee's syllogism that because he paid a $37 fine to the clerk, prosecution and further sanctions imposed by the municipal court would run afoul of the multiple-punishment component of the Double Jeopardy Clause.

In the case of *United States v. Morgan* (C.A.2, 1995), 51 F.3d 1105, the defendant, the CEO of a bank, personally participated in a series of real estate transactions conducted through a wholly owned subsidiary corporation. The bank failed, and the Resolution Trust Corporation seized its assets. In the process of liquidating the assets, it became apparent that the former CEO improperly concealed real estate commissions through a "straw" broker, and committed other complicated acts of subterfuge to avoid federal banking laws. The Office of Thrift Supervision ("OTS") of the United States Treasury Department filed a "Notice of Charges" pursuant to Section 1818(b), Title 12, U.S.Code, against the CEO, claiming that his acts caused the bank to lose $2,275,000 and seeking an order prohibiting the CEO from working in any other federally insured bank. The CEO entered into a settlement, whereby the CEO agreed to pay the OTS $300,000 in "restitution" and an additional $1.5 million labeled a "personal obligation." The OTS voluntarily dismissed the injunction action, and the court entered a consent judgment.

Eight months after the consent judgment, a federal grand jury indicted the CEO on two counts of bank fraud and four counts of misapplying bank funds. The CEO filed a motion in the district court to dismiss the criminal charges on the ground that the proposed prosecution was barred by double jeopardy. The district court judge denied the motion, and the CEO appealed.

Upon appeal, the government argued, *inter alia*, that, because the OTS had no authority to impose a fine, the $1.8 million was not a civil penalty authorized by statute, and that, therefore, the OTS did not impose a "punishment" for double jeopardy purposes; the OTS did have authority to obtain restitution but did not have authority to impose a penalty or fine. The appeals court agreed with the government's characterization of the "personal obligation" portion of the $1.8 million settlement as a "fine," *id.*, 51 F.3d at 1115, and acknowledged that the OTS had no statutory authority to impose the fine, *id.* at 1114, fn. 2, but the court rejected the argument that double jeopardy protections were not triggered under the circumstances. Circuit Judge Cardamone wrote:

---

actually spends time in jail, which cannot be regained, it makes no difference from the viewpoint of the convict whether or not the sentence was authorized. Either way, he has, in fact, spent time in jail. Common sense requires us to reject the state's formalistic argument that we pretend a *de facto* punishment never happened because of some technicality in the law about which the convict neither knows nor cares.

"In this case, the machinery of the state, as embodied by the OTS, compelled Morgan into undertaking this financial obligation. It is not controlling for analytical purposes whether that compulsion was or was not statutorily authorized.

"Even were the government to have acted *beyond its authority* in punishing an offender against its laws, the protections of the Double Jeopardy Clause are nonetheless triggered when the government acts to punish the same offender a second time. The government's argument boils down to this: if the OTS settlement with Morgan went beyond restitution, then the OTS exceeded its statutory authority in reaching it. We do not think governmental overreaching—if it occurred and if it amounted to punishment—will prevent Morgan from now asserting his constitutional right to be free from a second punishment for the same offense." (Emphasis added.) *Id.* at 1114.

In essence, the court held that, although the OTS had no authority to impose the $1.5 million "personal obligation," the protection against multiple punishment is still triggered, and the defendant could validly raise a double jeopardy defense.[5]

In our case, the state argues that, because the clerk had no authority to impose the $37 fine, appellee has not been "punished" once, and that a second punishment would not offend the Double Jeopardy Clause. This argument is the same as the government's argument in *Morgan. Morgan* is distinguishable in several important respects, however.

First, the entity that imposed the "fine" in *Morgan* possessed the statutory authority to obtain monetary restitution from the defendant. The issue was whether the OTS *exceeded* that statutorily based authority by imposing a *penalty* upon the defendant. In this case, the deputy clerk had no authority to accept a plea or impose a sentence upon appellee. Thus, the issue here is not whether a power was exceeded as in *Morgan*, because there was no power vested in the deputy clerk in cases involving a violation of R.C. 1531.02 to exceed.

Additionally, while it is true that appellee has been deprived of his money as a result of the clerk's unauthorized act, this deprivation is not permanent. In *Morgan*, when the parties entered into settlement and the court approved that settlement by entering a consent judgment, the OTS became a judgment creditor

---

5. The court, in a later portion of the opinion, rejected the CEO's double jeopardy claim on its merits because the settlement represented a compromise position reached between the parties. OTS claimed that the CEO caused $2,275,000 in damages to the bank, against which the government had to insure. The CEO offered to pay a total of $1.8 million to mitigate those losses. Thus, the court considered settlement payments to be remedial, not punitive. Since the CEO failed to show that he was once subjected to "punishment" as understood by the Double Jeopardy Clause, the criminal action was not barred. *Id.*, 51 F.3d at 1115.

and defendant became a judgment debtor. This judgment could not be set aside or avoided at the defendant's insistence after the time for appeal elapsed; the defendant's loss of funds was permanent.

Conversely, in this case, there is no permanent deprivation because appellee may seek a refund of the incorrectly received and wrongfully detained funds, at any time, by using appropriate channels of compensation (Court of Claims, R.C. 2743.01 *et seq.*, or court of common pleas). In fact, appellee had the opportunity to request a refund of the fine and costs either in his motion to dismiss or during the hearing on the matter. Instead appellee has chosen to do nothing and claim that since the state has taken his money, albeit without authority, its power to punish him is at an end. Ironically, appellee's failure to request a refund of his money is the basis for his "multiple-punishment" double jeopardy defense.

When viewed in this light, the state's failure to return the $75 may be construed not as "punishment," but as a claim against the state for wrongfully withholding appellee's money, which appellee can pursue at his will. Consequently, we hold that a claim against the state is not "punishment" for double jeopardy purposes.

In accordance with the foregoing analysis, a subsequent proceeding culminating in a criminal sentence is not precluded by the multiple-punishment component of the Double Jeopardy Clause.

### D. Conclusion

The Double Jeopardy Clause imposes no obstacles to trial in this case. Jeopardy did not attach in any sense to the first proceeding so as to bar a second attempt to convict appellee. Nor has appellee been lawfully punished once for this offense so as to bar a second attempt to punish him by the state.

Since no cognizable interest protected by the Ohio or United States Constitutions is implicated in going forward to trial, we reverse the judgment of the municipal court dismissing the complaint against appellee and remand this cause for further proceedings upon appellee's not guilty plea.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., and CHRISTLEY, J., concur.