OPINION
{¶ 1} Phillip D. Cameron, defendant-appellant, appeals the February 4, 2002 judgment of the Franklin County Municipal Court, wherein the court found appellant guilty of telecommunications harassment, in violation of Gahanna Codified Ordinance 537.10(a)(5), a first-degree misdemeanor.
 {¶ 2} In approximately June 1999, appellant, an attorney, met Terri Edwards while she was employed as an entertainer at a nightclub. Many of the remaining facts are either unclear or disputed. For the purposes of this factual summary, we will cite mainly the testimony of Edwards. Appellant's testimony, which differs significantly from Edwards, will be set forth more fully in our discussion of appellant's assignments of error. Edwards characterized their relationship as "friends," and that she saw appellant "socially." Although she testified that she did retain appellant to represent her in a case she filed against Value City Furniture Store, she claimed that appellant filed or became involved in other cases involving her or her family of his own volition. For instance, she testified that, after he discovered her grandmother had recently died, he called her grandmother's attorney to inquire about the estate. She also indicated that, without her knowledge, appellant called her ex-husband, Brian Edwards, in early 2001, and threatened a lawsuit based upon charges Brian had made using Terri's computer at the end of their marriage.
 {¶ 3} Further, in March 2001, after she told appellant that there had never been any increase in her sixteen-year-old son, Mahlon Adcock's, child support from his father, Michael Lane, appellant sent a letter to Lane telling him he intended to file a motion to increase child support. A few days later, appellant called and told Edwards to fax some information to him as to why she believed Lane was withholding income, which she did on March 26, 2001. She also faxed some documents to appellant in mid-May 2001 from the child support enforcement agency, regarding Mahlon, as well as a summary of why she thought Lane was hiding income. However, she testified that she was not aware appellant had sent a letter to Lane, and she did not know what appellant was going to do with the information she sent him. She said she had no intent to file for an increase in child support, and that appellant filed for an increase on his own.
 {¶ 4} She also testified that, in April 2001, at appellant's request, she forwarded information to him that she had received from another attorney, Brad Kelley, whom she had retained to represent her in an action against Stephen Adcock, her daughter Courtney's father, for reallocation of parental rights. She said appellant told her he was "co-counseling" on the matter, though she had never hired him as her attorney.
 {¶ 5} Edwards also testified that appellant interjected himself into a number of her son Mahlon's juvenile delinquency and traffic cases without her or Mahlon's permission. She testified that she received a letter on June 12, 2001, from Mahlon's former juvenile attorney, Tom Schmidt, explaining that appellant had approached him in September and October 2000, and told him that he would now be representing Mahlon. Edwards indicated she never hired appellant to represent Mahlon, though appellant claims that Edwards asked him to try to get one of Mahlon's previous adjudications vacated. Further, on May 23, 2001, appellant appeared at Mahlon's juvenile traffic hearing and eventually continued the hearing to July 9, 2001, while neither Edwards nor Mahlon were present, despite the fact that Edwards wanted to just pay the fine and end the case. She stated she never asked appellant to attend the May 23, 2001 hearing; however, appellant claims she asked him to attend.
 {¶ 6} Edwards testified that, on May 23, 2001, after Mahlon's hearing, appellant also filed an action on behalf of Edwards against Byers Chevrolet. The case concerned her negative equity position in a car she had leased from Byers Chevrolet. Edwards testified that the Byers Chevrolet action was filed without her consent. However, appellant testified that Edwards demanded the Byers Chevrolet case be filed, and that he did not initiate it on his own. He indicated that he filed that case on May 25, 2001.
 {¶ 7} Edwards testified that, on the next day, appellant called her home and she told him that she wanted him to leave her alone and not contact anyone in her family. Edwards testified that she needed to end the relationship because appellant's "hundreds" of phone calls "day and night" were becoming excessive, his behaviors were becoming "bizarre," he was dragging out some of the cases so that he could see her more, and she was growing fearful. She testified that the phone calls were personal in nature and had nothing to do with any legal actions.
 {¶ 8} On June 2, 2001, appellant called Edwards at home, and she told him that he was not her attorney, not to contact her or her family anymore, and to quit bothering her, or she would sue him. Two days later, Edwards sent appellant a certified letter in which she again told him that she wanted no further contact from him, that she never hired him as her attorney (except for the action against Value City Furniture), that he initiated all of the other legal actions on his own, and that she wished him to withdraw from all cases involving her or her family. She testified that she received the certified mail receipt indicating that appellant had received the letter. She also faxed a copy of the letter to appellant. She further testified that, on June 22, 2001, she received a fax from appellant, in which appellant acknowledged receipt of the certified letter.
 {¶ 9} Edwards testified that appellant then called her again on June 22, 2001. Her foster daughter, Ruth Ann Williams, answered the phone. Appellant wanted to speak to Edwards, but Edwards told Ruth that she did not want to talk to him. Ruth eventually hung up the phone. Edwards ran a trace through Ameritech, confirming the call was from appellant. It is not certain whether appellant received the June 22, 2001 fax before or after the phone call. Sometime later, appellant called Edwards again, at which time she answered the phone herself. Appellant stated that he wanted to talk to her, but she hung up on him. She stated that at the time of the incident, she was afraid of appellant.
 {¶ 10} On June 28, 2001, a complaint was filed by the prosecutor for the city of Gahanna ("Gahanna"), plaintiff-appellee, against appellant in the Mayor's Court of Gahanna, Ohio, charging appellant with one count of telecommunications harassment, in violation of Gahanna Codified Ordinance 537.10(a)(5), a first-degree misdemeanor, with regard to the June 22, 2001 phone call. The case was subsequently transferred to the Franklin County Municipal Court. On July 9, 2001, appellant sought to withdraw from representation of Mahlon in the juvenile traffic matter; however, that court denied the motion due to failure of proof of service of the motion to Mahlon.
 {¶ 11} On July 20, 2001, appellant filed a motion to dismiss, arguing that he was the attorney for the minor Mahlon, who lives with Edwards, and must, by reason of ethical necessity and to preserve client confidences, be permitted to make telephone calls to his client's home. On November 21, 2001, the trial court denied the motion to dismiss. On December 31, 2001, appellant filed another motion to dismiss, arguing that, even if the facts underlying the charge were factually true, the violation was inconsequential or a de minimis violation. On January 23, 2002, the trial court denied appellant's motion.
 {¶ 12} A bench trial was held. On February 4, 2002, the trial court found appellant guilty of the charged offense. Appellant was sentenced to thirty days incarceration, with all thirty days suspended, a ten-dollar fine plus court costs, and three months of non-reporting probation, and was ordered to stay away from and have no further contact with Edwards. Appellant appeals the judgment of the trial court, asserting the following three assignments of error:
 {¶ 13} "[I.] The trial court erred in finding that Appellant's action in attempting to contact client by telephone was not justified, despite trial court's factual finding that such call was made pursuant to the attorney-client relationship.
 {¶ 14} "[II.] The trial court erred in holding that Appellant would not have violated the telecommunications harassment statute in contacting client by fax.
 {¶ 15} "[III.] The trial court erred in failing to dismiss the complaint as a de minimis violation."
 {¶ 16} We will address appellant's first and second assignments of error together. Appellant argues in his first assignment of error the trial court erred when it found that his actions in attempting to contact his client by telephone were not justified, despite the court's previous factual finding in its November 21, 2001 decision denying his motion to dismiss that such call was made pursuant to the attorney-client relationship. Appellant argues in his second assignment of error the trial court erred in holding that appellant would not have violated the telecommunications harassment statute in contacting his client by fax.
 {¶ 17} Initially, we must address an issue that causes this court some concern. Apparently, appellant has failed to provide us with a full transcript of the trial. Pursuant to App.R. 9(B), it is the duty of appellant to order from the court reporter a complete transcript or a partial transcript highlighting portions of the proceedings appellant considers necessary for inclusion in the record and to have the transcript prepared and filed. See, also, State ex rel. Montgomery v. R D Chem. Co. (1995), 72 Ohio St.3d 202. We have no way of knowing what evidence and testimony is not included in the record. There seems to be a reference to another witness whose testimony is not included in the partial transcript filed by appellant. We do not know why the testimony of this witness was not included. We also do not know whether the trial court ever gave any oral findings on the record. Appellant's failure to provide this court with a complete record is particularly vexing given that, in addressing the first assignment of error, we must discuss the manifest weight of the evidence, which requires that this court examine the entire trial record. Thus, appellant has left us unable to adequately review his claims. Despite this deficiency, we will address the assignments utilizing the record available to us, particularly in light of the fact that Gahanna has not raised any argument regarding missing portions of the transcript.
 {¶ 18} Gahanna Codified Ordinance 537.10(a)(5) provides:
 {¶ 19} "(a) No person shall knowingly make or cause to be made a telecommunication, or knowingly permit telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following:
 {¶ 20} "* * *
 {¶ 21} "(5) Knowingly makes the telecommunication to the recipient of the telecommunication, to another person at the premises to which the telecommunication is made, or to those premises, and the recipient or another person at those premises previously has told the caller not to make a telecommunication to those premises or to any person at those premises." See, also, R.C. 2917.21.
 {¶ 22} Appellant's version of the events leading up to the telephone harassment complaint is somewhat different than Edwards' version. Concerning appellant's representation of Mahlon in the juvenile traffic matter, appellant claimed that Edwards did, in fact, request that he attend and represent her son at the juvenile traffic hearing on May 23, 2001. He stated that he assumed Edwards wanted him to negotiate a plea bargain for the traffic offenses, so he had to continue the case until a Gahanna representative could be present to negotiate. He testified that Edwards would not have asked him to represent Mahlon if she had just wanted to pay a fine. He stated that neither Mahlon nor Edwards was in the courtroom when he continued the case. When he told Edwards that he had continued the May 23, 2001 juvenile traffic date, he admitted that she was surprised because she said she did not want to return to court.
 {¶ 23} He testified that he went to a party held by his friend, Donnita Carroll Pritchard, with Edwards on approximately May 27, 2001. Edwards told him that she wanted to go and that she would only go if he told everyone that they were either engaged or going to be engaged to be married. He told her that was premature, but agreed to do it. Donnita Carroll Pritchard testified that Edwards and appellant came together to her party, and Edwards did not appear frightened and seemed to be having a good time. Edwards testified that she did not want to go to the party, but that she felt compelled to go because appellant had just filed another case, the Byers Chevrolet case, for her. Appellant stated that, prior to appearing at the party, there was no directive from Edwards to cease communicating with her, and it was not uncommon for the two to communicate often. Between March and May 2001, he had numerous communications with Edwards. Sometimes she would call or fax him information, and sometimes he would call or fax her.
 {¶ 24} Appellant acknowledged receiving Edwards' certified letter sometime after the May 27, 2001 party. Appellant also stated that he received a fax of the letter from Edwards telling him to stop communicating with her prior to his telephone call on June 22, 2001. Appellant stated that he understood the fax. Appellant testified that he did not remember whether Edwards told him over the phone not to communicate with her between May 27 and June 22, 2001.
 {¶ 25} Appellant admitted at trial that he called Edwards' home on June 22, 2001. He stated that it was possible by the time he called Edwards on June 22, 2001, he had forgotten the substance of Edwards' fax. He stated that he did not remember his state of mind on June 22, 2001, but he saw no harm in calling Edwards and Mahlon. He said he had been looking over his cases that day and noticed that Mahlon's case was coming up soon and Edwards' case against Byers Chevrolet was still pending. Thus, he stated he called to tell Edwards about Mahlon's next hearing date on July 9, 2001, and the status of her Byers Chevrolet case. He also wanted to tell her that he was withdrawing from both the Byers Chevrolet case and Mahlon's juvenile case. He stated that he called because he did not want anything bad to happen to Mahlon for failing to appear.
 {¶ 26} He testified that, when he called, he asked to speak to Edwards, not Mahlon, because he believed Mahlon would not be there. He also said that he always tried to talk to the parent first when representing a minor, as not to undermine the parent's authority by speaking to the juvenile only. Appellant admitted that he had already informed them in-person on May 23, 2001, that the next hearing for Mahlon's case would be on July 9, 2001, but that juveniles sometimes forget their court dates. Appellant admitted that, when he needs to notify a juvenile, he might call, fax, write a letter, or send a messenger. He further testified that Edwards had wanted to use him in the past to control her son when he was disobedient, so he did not trust that Mahlon would give her a fax.
 {¶ 27} Turning to appellant's argument, appellant asserts that, as the attorney for Mahlon, with regard to the pending juvenile traffic matter, and for Edwards, with regard to the pending Byers Chevrolet case, he had a duty to contact his clients and maintain good attorney-client communication, thereby giving him a justifiable excuse to call Edwards and Mahlon on June 22, 2001. He further claims that, because Edwards stated that she would allow no communication of any type between appellant and Mahlon, appellant had no other alternative than to call the residence. He states that he was attempting direct telephonic communication with his client because that was the only way he could be assured that Edwards had not intercepted the communication.
 {¶ 28} Appellant asserted this theory in his motion to dismiss and at trial as an "affirmative defense." Under Ohio law, an affirmative defense is justification for admitted conduct, which does not "seek to negate any of the elements of the offense which the state is required to prove." State v. Martin (1986), 21 Ohio St.3d 91, 94. Affirmative defense is defined by R.C. 2901.05(C), which provides:
 {¶ 29} "* * * [A]n `affirmative defense' is either of the following:
 {¶ 30} "(1) A defense expressly designated as affirmative;
 {¶ 31} "(2) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence."
 {¶ 32} Because appellant's argument is not a "defense expressly designated as affirmative," acting under an ethical duty pursuant to the attorney-client relationship can be an affirmative defense only if it falls under R.C. 2901.05(C)(2) as "involving an excuse or justification." R.C. 2901.05(A) states that the burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, is upon the accused. State v. Doran (1983), 5 Ohio St.3d 187,193.
 {¶ 33} Before addressing appellant's argument, we must first note that appellant's argument is, in effect, a manifest weight challenge. When reviewing a claim by a defendant that evidence he has presented supports an affirmative defense, the manifest-weight standard is the proper standard of review. State v. Coleman, Cuyahoga App. No. 80595, 2002-Ohio-4421. This is because a defendant claiming the affirmative defense does not seek to negate an element of the offense charged but, rather, seeks to relieve himself from culpability. Id. See, also, State v. Roberts (2000), 139 Ohio App.3d 757; Martin, supra, at 94. In reviewing a matter based upon the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 34} In the present case, Gahanna proved beyond a reasonable doubt that appellant knowingly made a telecommunication to Edwards' premises after Edwards told him not to have any communications with her or anyone at her premises. Appellant did not dispute the existence of these elements, but, rather, sought to justify his actions on the ground he acted pursuant to his ethical duties as an attorney to communicate with his clients. We find no case law to support his proposition that such ethical duties constitute an affirmative defense to a violation of Gahanna Codified Ordinance 537.10(a)(5) (or R.C. 2917.21, the corresponding section of the Ohio Revised Code), and appellant does not direct us to any supporting authority.
 {¶ 35} However, even assuming, arguendo, that such ethical obligation may provide an affirmative defense to Gahanna Codified Ordinance 537.10(a)(5), we find that the trial court did not err in rejecting appellant's affirmative defense. Unfortunately, this being a criminal case, the trial court did not issue a written decision with findings of fact and conclusions of law. Therefore, we do not know why the trial court rejected appellant's affirmative defense. Nevertheless, we find that the trial court could have found appellant's affirmative defense unconvincing for two reasons.
 {¶ 36} First, the trial court may not have found appellant's testimony credible. Because the defense appellant claimed was peculiarly within the knowledge of the accused, after appellant met his burden of going forward with evidence to support such a defense, the issue then became a matter of credibility. See R.C. 2901.05(C)(2). The trier of fact, not the reviewing court, weighs the evidence and judges the credibility of the witnesses. Martin, supra, at 95. In the present case, credibility was crucial. Because of the apparent disintegration of the personal relationship between appellant and Edwards, their testimony may have been distorted by hostility, emotion, vindictiveness, or resentment. Our own reading of the transcript makes it difficult to determine whether appellant's or Edwards' version of the facts was true. Therefore, we depend largely on the trial court's determination of credibility.
 {¶ 37} Although appellant did present testimony that he was telephoning Edwards on June 22, 2001, in order to conduct conversations pursuant to his attorney-client relationships with Edwards and Mahlon, the trial court may have found appellant's testimony not credible and the testimony of Edwards credible. Given the personal history described by Edwards, the trial court could have found Edwards' testimony that appellant did not call her on June 22, 2001, in order to speak to her or Mahlon about legal matters credible. The trial court may have found that appellant called solely to speak to Edwards about their apparently decaying personal relationship. Edwards testified that she believed appellant had been attempting to prolong their relationship by filing lawsuits on her behalf without her knowledge. She also testified that she had become frightened of appellant because he had been calling her constantly. Also, appellant admitted that he had already informed Mahlon and Edwards at the May 23, 2001 hearing about the next hearing on July 9, 2001. Appellant also testified that he thought he had already faxed her twice about the pending cases prior to June 22, 2001. Thus, because Edwards and Mahlon already knew about the pending cases, the trial court may not have believed appellant's claim that he was calling to remind them. Therefore, the trial court could have found Edwards' testimony credible and determined that appellant did not carry his burden of proof on his affirmative defense. Such determination would not have been against the manifest weight of the evidence.
 {¶ 38} Appellant counters that such a finding would be inconsistent with the trial court's factual findings in its November 21, 2001 decision denying his motion to dismiss, in which the court determined that "it appears to this Court that Defendant Cameron was attempting to communicate information consistent with an attorney-client relationship after receipt of Defendant's Exhibit `G' thru [sic] his actions (phone call and fax) on or about June 22, 2001." Exhibit G was the early-June 2001 fax from Edwards instructing appellant to make no further communications to her. However, it is well-established that the common pleas court's denial of a motion to dismiss generally constitutes an interlocutory order that is not immediately appealable. See Ferrell v. Standard Oil Co. (1984), 11 Ohio St.3d 169; State v. Hawkins (1986),30 Ohio App.3d 259; State v. Loshin (1986), 34 Ohio App.3d 62. Interlocutory orders are subject to change or revision by the trial court any time prior to the issuance of a final judgment. Noble v. Colwell (1989), 44 Ohio St.3d 92, 96. Therefore, the trial court would have been well within its power to change its mind regarding its previous finding that appellant called pursuant to his attorney-client relationship after it held the full trial on the merits.
 {¶ 39} Second, even if appellant had called Edwards in order to fulfill his ethical duty as her and Mahlon's attorney, the trial court may have determined that appellant had other reasonable options to fulfill his ethical obligations besides contacting Edwards and Mahlon via telephone. It has been held that a defendant fails to meet his burden of proof for claiming an affirmative defense under R.C. 2901.05(C)(2) when there was insufficient evidence to negate reasonable alternatives to the commission of the crime in question. State v. Allberry (Jan. 31, 1991), Hocking App. No. 90CA09.
 {¶ 40} In the present case, although the trial court did not enumerate its reasons for rejecting appellant's affirmative defense, in its November 21, 2001 decision denying appellant's previous motion to dismiss, it found appellant had several alternatives that would not have run afoul of the Gahanna laws. Appellant's attempts to discount these alternatives are unconvincing. The trial court found in its November 21, 2001 decision that appellant could have filed a proper motion to withdraw from Mahlon's case after receiving the fax and certified letter dismissing him as an attorney for Edwards and Mahlon. We agree. Appellant's attempt to withdraw on July 9, 2001 was inadequate. Appellant failed to file a motion in writing, failed to introduce any evidentiary support (which could have included Edwards' certified letter), failed to complete an affidavit averring to the circumstances, and failed to give proper notice of his motion to withdraw, as required by Franklin County Juvenile Court Local Rule 11. Proper notice of his motion to withdraw could have been assured by certified mail.
 {¶ 41} In addition, even if he did not file a motion to withdraw, he could have sent a letter by ordinary mail or certified mail to Edwards and Mahlon explaining his ethical obligations and informing them of their pending cases. Appellant argues that he needed to telephone both of them so that he could get definitive confirmation that they received his message. However, appellant could have received confirmation of any letter sent via ordinary mail by requesting a response from his clients. Also, the signature on a certified letter's return receipt could have confirmed a certified letter had reached Edwards and Mahlon. Therefore, appellant could not claim an affirmative defense under R.C. 2901.05(C)(2) when there was insufficient evidence to negate reasonable alternatives to the commission of telecommunications harassment pursuant to Gahanna Codified Ordinance 537.10(a)(5).
 {¶ 42} The trial court also found in its November 21, 2001 decision that appellant could have alternatively contacted Edwards and Mahlon via fax. Appellant argues in his second assignment of error the trial court erred in this finding because sending a fax would have also violated the telecommunications harassment statute. Gahanna Codified Ordinance 537.10(e)(3), indicates that "telecommunication" and "telecommunications device" have the same meanings as in R.C. 2913.01. Although a facsimile may fit under the definition of "telecommunication" and "telecommunications device" in R.C. 2913.01, we need not determine such. We have found above that, under the circumstances, other reasonable alternatives for contacting Edwards and Mahlon existed, including ordinary mail and certified mail. The trial court's suggestion in its November 21, 2001 decision that appellant could have used a fax is, therefore, inconsequential. For the foregoing reasons, appellant has failed to sustain his burden to prove an affirmative defense, and the trial court's decision was not against the manifest weight of the evidence. Appellant's first and second assignments of error are overruled.
 {¶ 43} Appellant argues in his third assignment of error the trial court erred in failing to dismiss the complaint as a de minimis violation. The appropriate standard for reviewing the trial court's denial of appellant's motion to dismiss is de novo. "In general, an appellate court will defer to a trial court's factual findings, but must independently determine, as a matter of law, whether the trial court erred in applying the substantive law to the facts of the case." State v. Musick (1997), 119 Ohio App.3d 361, 367. "De minimis non curat lex" is a legal maxim meaning the law does not care for, or take notice of, very small or trifling matters. Black's Law Dictionary (6th Ed. 1990) 431. Appellant cites two cases in which courts dismissed harassment complaints because the violations were de minimis. However, both of the cases cited by appellant were from jurisdictions outside this state, and we decline to follow them. Although appellant points out that the trial court never found any malicious purpose, improper motive, or harm to the complainant, none of these are elements to the crime of telecommunications harassment under Gahanna Codified Ordinance 537.10(e)(3). Further, the statute requires only a single violation in order to fall under its purview. If the Gahanna lawmakers or Ohio Legislature had wanted to carve out exceptions for single infractions, relationships gone badly, or other circumstances, it could have. We also find it significant that Edwards told appellant twice over the phone to cease all communications with her and that she also took the formal steps of sending a certified letter and faxing the same. Admittedly, the result reached by the trial court and this court may seem somewhat harsh. However, we are constrained to follow the clear language of the ordinance. Thus, we find appellant's single clear violation of the ordinance was not a de minimis violation. Appellant's third assignment of error is overruled.
 {¶ 44} Accordingly, we overrule appellant's three assignments of error and affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
DESHLER and PETREE, JJ., concur.